UNION AGRICULTURAL AND STOCK ASSOCIATION v. NEILL.

1. Corporation: LIABILITY OF SUBSCRIBERS TO STOCK: CHANGE OF ARTICLES. Immaterial changes, or such as the law would imply, in articles of incorporation, will not affect the liability of a stockholder who subscribed his stock before such changes were made. *Aliter*, if such changes were material and not such as the law would supply.

2. Evidence: ERROR WITHOUT PREJUDICE. The admission of evidence which, though not properly admissible, could have worked no prejudice to the party complaining, constitutes no sufficient ground for reversal.

3. Stamps: EVIDENCE: ONUS PROBANDI: CANCELLATION. When an instrument is offered in evidence bearing a proper revenue stamp, the presumption of law is that it was stamped at the proper time, and by the proper authority, and the onus is on the opposite party to rebut this presumption by a preponderance of evidence.

4. —— The mode of cancellation of a revenue stamp is not essential to the validity of the instrument; nor would it be void, it seems, though not canceled at all.

*Appeal from Lee Circuit Court.*

SATURDAY, JANUARY 28.

ACTION upon an alleged subscription of $500 to the stock of plaintiff; jury trial; verdict and judgment for the plaintiff. Defendant appeals.

The facts are stated in the opinion.

*Gilmore & Anderson* for the appellant.

*H. Scott Howell* for the appellee.

DAY, J. — I. The subscription of the defendant was made on the 26th day of October, 1867. It appeared upon the trial that prior to this date articles of incorporation were written out and signed by the several incorporators. Of these, article ten was as follows, to wit:

1. CORPORATION: liability of subscribers to stock: change of article.

" This company may elect their officers, giving three days' notice, and commence business whenever there shall be $10,000 of the stock subscribed; which officers shall act until their successors have been duly elected as provided in article three, and the company shall continue and exist for the term of twenty years from January 1, 1868, subject to renewal for such longer period as may be determined by vote of two-thirds of the stockholders then in the company."

After the defendant had subscribed, the articles were copied, and on the 28th day of October the copied articles were signed and acknowledged. Before the acknowledgment, the following changes were made, to wit: in article ten it was provided that the company should continue for the term of twenty years *from this date* (the date of acknowledgment) subject to renewal by a vote of *three-fourths* of the stockholders.

It is claimed that in consequence of this change the organization to which defendant subscribed is not the one which is attempting to enforce the subscription, and that the defendant, consequently, is not liable to the plaintiff.

It may be admitted that a material and radical change in the objects of the association would release the defendant from his liability upon his subscription. *Hartford & N. H. R.* v. *Croswell*, 5 Hill, 388. But the changes here made are not of such character. The first simply provides, that the organization shall continue twenty years from the 28th day of October, 1867, instead of twenty years from the 1st day of January, 1868. This amendment simply incorporates into the articles of association a condition, which, if not inserted, the law would imply.

By section 1158 of the Revision, the duration of this corporation cannot exceed twenty years. After the lapse of that time from its organization, it must expire by limitation of law, although the articles of incorporation provide for a longer duration; and the same is true of the change providing for renewal upon the vote of *three-fourths* instead

of *two-thirds* of the stockholders. Under said section such renewal can be had only upon such *three-fourths* vote.

If the change had not been made, the provision requiring a two-thirds vote would have been simply inoperative. If the articles had remained as originally drawn, or if they had been entirely silent with regard to duration and mode of renewal of the corporation, the law would have attached to them the same consequences as now. In either case the corporation would endure twenty years from the date of its organization, with a right of renewal by a vote of *three-fourths* of the stockholders.

It follows that the changes are entirely immaterial. The defendant could not possibly be prejudicially affected by them. They do not precipitate a call for installments on his subscription. The original articles provide that the company should commence business when the subscription reached $10,000.

The amended articles contain the same provision. Under both, the same contingency renders defendant liable to a call for payment. In fact $10,000 had been pledged before the defendant subscribed, so that his liability to a demand for payment was created at the time of his subscription. The change being immaterial, does not exonerate defendant from his obligations. *Hartford & N. H. R.* v. *Croswell, supra.*

II. The plaintiff introduced R. S. Ruddick, as a witness, who referred to a conversation which he had with defend-

2. EVIDENCE: error without prejudice.

ant in St. Louis, about the 15th day of October, 1867. The plaintiff then asked the following questions: "What did defendant say to you, if any thing, respecting taking stock in the association or desiring to take stock in said association?" The defendant's objection that this question was irrelevant and immaterial was overruled, and the witness answered as follows: "Mr. Neill was at St. Louis when I went down; he asked about the general news at Keokuk; I told him the principal thing was a

stock association for the purpose of buying grounds and of holding the same; I told him the ground we talked of buying, and the price it could be bought at; I told him the amount of the stock and the number of persons who were proposing to go into it. That is about the substance of what I told him. Defendant expressed his approval of such an association; said it was a good thing, and such a thing as we ought to have here. Defendant remarked that if the stock was not all taken that he would like to have the opportunity of taking some stock. I told him I was coming home and I would make a reservation of stock for him of $500. I told him of the different parties who had taken $500 of stock, and that is the amount he proposed to take. I am a director in this company." Plaintiff then asked the following question: " State what you did, if any thing, in respect to the wish expressed by the defendant, after you got home, respecting stock in the association?" The defendant's objection to this question, upon the same ground as before, was overruled, and witness answered: " I think the next day after I got home, I saw H. W. Sample, who was active in getting up this association and told him I wanted $500 of that stock for Mr. Neill; that I had seen Mr. Neill and that he, Neill, said he would take it. Mr. Sample told me to sign his name for him. I told Sample that Neill would be home in a few days and he would do it." The admission of this testimony is assigned as error. Its connection with the case is rather historical than otherwise. Its relevancy and materiality are not very apparent, and yet, if altogether immaterial and irrelevant, it is difficult to perceive in what manner the defendant can be prejudiced thereby. If these answers had been entirely withdrawn from the jury, their finding upon the material facts would not have been affected. The defendant's liability to the plaintiff grows out of his subscription. The fact that upon a prior occasion he expressed a desire to subscribe, and that this desire was communicated to the agent of the plaintiff,

neither increases nor diminishes his liability under the subscription ; nor can it be presumed that it had any controlling effect upon the minds of the jury. There is but one question upon which it can be supposed to bear, that of the alleged fraud of Sample in obtaining the subscription. But, as appellant's counsel expressly waives a consideration of that question, we need not consider the effect of this evidence thereon.

Plaintiff also asked the following question : " State when the articles of incorporation of the Union Agricultural and Stock Association were adopted ? " To this the defendant objected that it was irrelevant and incompetent, and that the articles themselves were the best evidence. The objection was overruled and the question answered. This ruling is assigned as error. It is a sufficient response to this objection that the bill of exceptions shows that the answer of the witness, so far as it refers to the time of adoption of the articles of incorporation, was by the court withdrawn from consideration of the jury.

A. M. Carpenter was then introduced as a witness for plaintiff, and the following questions asked : " State, if you know, what contracts the plaintiff entered into after the 26th day of October, 1867, if any, respecting the purchase of property or making improvements thereon for the purposes of the association ?" The defendant's objection to this question was overruled, and upon this ruling he assigns error. The remarks made in reference to the former questions apply to this. A party cannot successfully urge an error in the proceedings of the court which worked him no prejudice. See cases cited in Dillon's Dig., p. 419.

III. During the progress of the trial the defendant filed an amended answer, in which he alleged that he did 3. STAMPS: evidence. onus probandi : cancellation. not stamp the subscription paper, and that he never authorized any one to cancel the stamps thereon. Plaintiff thereupon filed an amendment to his petition averring that the defendant did

not, at the time of subscription, affix and cancel a stamp, but that at the time he authorized the said H. W. Sample to affix and cancel a proper stamp, and that this was done by him. This again is denied by a further amended answer. It is not claimed by appellant that the stamping would be invalid, if done by Sample in pursuance of an authority conferred by defendant at the time of subscribing. But it is said that the court erred in the instruction given. The stamp is canceled with a die bearing the letters U. A. and S. A. The words "Nov. 21, 1867," are *written* upon the stamp.

C. T. Davis testified: "The stock-book for subscriptions was received by the company sometime in November, 1867. When this book was handed to me as treasurer of the association, the stamp was on the book opposite to Mr. Neill's name, and the names of the subscribers. I don't know by whom the "die" was used when this stamp was canceled. The *die* is used for canceling stamps. The writing on the stamp, opposite defendant's name, I did myself. The stamp was attached when I received the book. I did this cancellation at the time the book was delivered to the company." The court then gave the following instruction: "If a person execute an instrument on which there is a proper stamp, the presumption of law is, that such person stamped the same, or that he authorized some one else to do it for him. Irregularity in canceling stamps on an instrument will not make it invalid. Said presumption may be rebutted, but to do so it is necessary to show, by a preponderance of evidence, that the defendant did not stamp said instrument, and that he did not authorize any one else to stamp the same for him."

The giving of this instruction is assigned as error. We attach but little importance to the form of the pleadings. The defendant first alleges that he did not *stamp* the subscription, and that he did not authorize any one to *cancel* the stamp thereon. This might be considered as a tacit

admission of the defendant that he did authorize some one to *place* a stamp on the subscription. Be that as it may, the first pleading assailing the validity of the subscription for want of proper stamp is interposed by defendant. If defendant had not suggested any defect in the manner of stamping, it could not have been seriously questioned that the plaintiff might have offered the subscription to the jury, without any proof in reference to the stamp. Does the fact that the plaintiff elected to amend his petition, instead of relying upon the denial which the law would imply by way of replication to defendant's answer, affect in any manner the burden of proof? We think not. The question then is, when a paper is offered in evidence, bearing the proper stamp, what is the legal presumption in regard to it? It is that it was stamped at the proper time, and by the proper authority. See *The Cedar Rapids and St. Paul R. Co.* v. *Stewart*, 25 Iowa, 115; *The Iowa and Minn. R. Co.* v. *Perkins*, 28 id. 281.

If such be the presumption, the burden of rebutting it is on the party against whom it is offered. This is the principle recognized by the instruction of the court.

It is claimed that this presumption cannot attach in this case because the cancellation shows that it was made in November, while the evidence discloses that the subscription took place in October. The evidence shows further, however, that the stamp had been canceled with a die before the witness, C. T. Davis, wrote thereon the date, Nov. 21, 1867. In the testimony upon this point there is no conflict. There being this cancellation with a die, bearing the initials of plaintiff, there is no presumption that it was not done at the proper time; and in view of this state of the evidence the instruction was proper. The mode of cancellation is not essential to the validity of the instrument, nor would it be void though the stamp were not canceled at all.

The remaining errors argued by appellant affect the

giving of instructions embodying the same view of the law as the one above considered, and the refusing to give others announcing the converse doctrine. They have therefore been anticipated and · determined in the discussion which has preceded.

We discover no error in the action of the court below, and its judgment is

Affirmed.