## TEXAS SEED & FLORAL CO. v. WATSON et al.

(Court of Civil Appeals of Texas. Dallas. Nov. 8, 1913.)

1. SALES (§ 418*) — BREACH OF CONTRACT — BUYER'S MEASURE OF DAMAGES — SALE OF SEED.

One who purchases seed represented by the seller to be good seed of a certain kind may, upon breach of the contract by furnishing seed of an inferior and different kind, recover the difference between the value of the crop produced from the seed delivered and the value of that which would have been produced from the seed ordered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*].

2. SALES (§ 411*)—BREACH OF CONTRACT—ACTIONS—SUFFICIENCY OF PETITION — ITEMIZING DAMAGES.

The petition, in an action for damages resulting from the delivery of cheat seed, instead

of oat seed as ordered, which alleged that the reasonable value of the time and labor required to remove the cheat from the soil and prevent it from interfering with other crops was a certain amount, was not defective for not itemizing the time and labor required.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1161–1164; Dec. Dig. § 411.*]

**3. Sales (§ 417*)—Actions for Breach—Sufficiency of Evidence — Parties to Contract.**

Evidence, in an action for damages from the delivery of cheat seed, instead of oat seed as ordered, *held* to show that the seed was ordered by plaintiff from defendant seed company through the person named, and not ordered directly from such person.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1173; Dec. Dig. § 417.*]

**4. Principal and Agent (§ 132*)—Liability of Principal—Scope of Agency.**

A principal is entitled to the benefits and subject to the burdens of all acts and contracts by the agent within the scope of his authority, so that a seed company was liable as principal for damages from furnishing defective seed ordered by its agent for plaintiff, though defendant did not know for whom the seed was ordered.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 459, 467–471; Dec. Dig. § 132.*]

Error from Hunt County Court; Geo. B. Hall, Judge.

Action by M. N. Watson against the Texas Seed & Floral Company and others. Judgment for plaintiff, and defendant named brings error. Affirmed.

Thompson & Manning, of Greenville, and Short & Feild, of Dallas, for plaintiff in error. Clark & Leddy and B. F. Vaughan, all of Greenville, for defendants in error.

TALBOT, J. M. N. Watson brought this suit against the Texas Seed & Floral Company and I. Jacobs to recover damages alleged to have resulted to him from the sale of spurious seed, which he charges he purchased from the said company through the said Jacobs. The petition alleges, in substance, that plaintiff is a farmer and owns and operates a farm in Hunt county, upon which he resides; that the defendant Texas Seed & Floral Company is engaged in the seed and floral business in the city of Dallas; that plaintiff desired to plant six acres of his farm in turf oats, which he declares to be of a superior kind; that they are planted in the fall and pastured throughout the winter, and will grow a good crop of oats for harvest early in the season; that he applied to the defendant I. Jacobs, who was a merchant in Wolfe City, to purchase the seed he desired, and was informed that he did not handle turf oat seed, but that he could procure the same from the defendant Texas Seed & Floral Company; that at the request of the plaintiff the defendant Jacobs ordered for the plaintiff, and to be delivered to the plaintiff, the seed for planting; that seed were delivered, which both defendants

stated to be turf oat seed; that plaintiff purchased eight bushels at $1.50 per bushel, relying upon the good faith of defendants and their representations in respect to said seed, and, believing that he was buying turf oat seed, paid the price charged therefor; that he prepared the ground, embracing six acres, and planted them; that had the seed been turf oats in fact he would have grown 70 bushels per acre, of the value of $1 per bushel, and the same would have been harvested the 1st of June, 1912; that instead of selling and delivering oat seed defendants, without the knowledge or consent of plaintiff, delivered cheat seed, a worthless grass or vegetation which seriously damages land wherever it is grown, and is worthless for any purpose; that it crowds out other vegetation, renders the land foul and difficult to cultivate, and requires much labor to remove and eradicate it from the land when it once gets a foothold thereon; that instead of producing a valuable oat crop, the land prepared and planted produced a heavy crop of cheat, rendering it necessary for the plaintiff to spend much time and labor in the future to eliminate the spurious growth from the soil and keep it from interfering with other crops to be grown thereon; that defendants knew, or could have known, the character of seed they delivered, and the damage it would do the land, and that the seed delivered was not oats but cheat. Plaintiff alleges that he has been damaged in the value of the oat crop which his land would have produced, amounting to $420, and that he was further damaged in the sum of $75, the reasonable value of the time and labor required to eliminate from the land the cheat which had grown thereon, and that the land had been damaged to the extent of $75, and judgment is prayed accordingly. The defendant Texas Seed & Floral Company answered by general and special exceptions to plaintiff's petition and a general denial. The demurrers to the petition were overruled, and a trial before the court and a jury resulted in a verdict and judgment in favor of plaintiff against the Texas Seed & Floral Company, for $175, and in favor of the defendant Jacobs. From the judgment rendered against it the Texas Seed & Floral Company prosecute this writ of error.

The first and second assignments of error are grouped in the brief, and complain, respectively, of the trial court's action in overruling defendant's general and special exceptions to plaintiff's petition. These assignments assert, in effect, that the value of the crop which might have been raised, had the seed been such as plaintiff ordered, and which he avers would have been $420, is remote and speculative and not recoverable; that the damage which the plaintiff might have recovered, if the allegations of his petition are true, is the original cost of the oat

seed which he purchased for sowing, with interest thereon, the reasonable value of the rent of his land, and the value of his labor in sowing and cultivating his crop. We think the court did not err in overruling the demurrers.

[1] It seems to be the settled law of this state, supported by the weight of authority in other jurisdictions, that the injured party in a case of this character may recover the difference between the value of the crop produced from the seed delivered and the value of the crop that would have been produced from the seed actually ordered. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; American Warehouse Co. v. Ray, 150 S. W. 763; Brooks v. Davis, 148 S. W. 1107. According to the allegations of plaintiff's petition the damages he sustained by reason of the breach of the contract alleged was practically the full value of the crop that would have been grown had turf oat seed and not cheat seed been delivered, together with the reasonable value of the time and labor required to eliminate from the land the cheat which had grown thereon. The allegations are to the effect that the crop of cheat produced from the seed delivered was practically of no value, and that had turf oat seed been delivered he would have grown on the land sown about 70 bushels of oats to the acre of the value of $1 per bushel. Thus, according to the averments of the petition, the difference between the value of the crop produced and the value of the crop that would have been produced had turf oat seed been delivered instead of the cheat seed is practically the value of the crop that would have been grown from the oat seed had such seed been furnished in accordance with the contract of purchase. The allegations, however, do not present a case where no crop was planted or no crop whatever produced. The cheat seed delivered were sown and a crop of cheat was grown on the land and harvested.

[2] Nor do we think plaintiff's petition was obnoxious to defendant's special exception No. 3. That part of the petition in which it is charged that time and labor would be required to eliminate from the land the cheat grown thereon was not defective because not itemized. It was sufficient for the petition, in alleging damages to the land, to state that the reasonable value of the time and labor to remove the cheat from the soil and to prevent it from interfering with other crops to be grown was $75. These allegations, it occurs to us, sufficiently apprised the defendant of this branch of the plaintiff's case to enable it to know the nature thereof and to prepare to meet the same.

[3] The fourth assignment is to the effect that the court erred in overruling defendant's motion to instruct the jury to return a verdict in his favor, because the undisputed evidence showed that the defendant Texas Seed & Floral Company had sold the seed involved in this suit to the defendant I. Jacobs, and that Jacobs had in turn sold the seed to plaintiff; that no contract was made between Texas Seed & Floral Company and the plaintiff, either directly or indirectly, and therefore it was not liable to plaintiff for any alleged breach thereof or warranty embraced therein. We think there was no error in this action of the court. The evidence, as we understand it, was sufficient to show that the seed were ordered by plaintiff from the defendant Texas Seed & Floral Company through I. Jacobs. The seed, it is true, were ordered in the name of Jacobs and billed to him, but Jacobs swore that he explained to the Texas Seed & Floral Company at the time the seed were ordered that he was ordering them for a customer. Plaintiff in error's manager swore that his company was engaged in handling seed for planting purposes only, and that it always knew when an order came that the seed ordered were wanted for planting purposes. In a letter to I. Jacobs, dated June 5, 1912, the president of defendant Texas Seed & Floral Company used the following language concerning this case: "After giving the matter careful consideration we believe that the man had a good feed crop, and he will find a good many oats in his field, and when we sold the oats to him the cheat was in the oats."

[4] It is shown without dispute that the seed in question were ordered for the plaintiff Watson by the defendant Jacobs as the agent of Watson, and that the defendant Texas Seed & Floral Company knew he was ordering the seed for a customer. It it clear that Jacobs was acting as the agent of the plaintiff in error in ordering the seed, and if it be admitted that plaintiff in error did not in fact know for whom the seed were ordered, yet the law is well settled, as we understand it, that if "one person is the agent of another, the latter, as to all matters falling within the scope of the agency, is entitled to the benefits and subject to the burdens of the act done and contracts made by the agent." Treating defendant as an undisclosed principal in the transaction involved in this suit, he was entitled, under the facts, to recover, and the motion for an instructed verdict in favor of the plaintiff in error was properly overruled.

What we have said disposes of the other assignments of error adversely to the contentions of the plaintiff in error.

The evidence supports the verdict; and, no reversible error being found in the record, the judgment is affirmed.