**PARLIN & ORENDORFF IMPLEMENT CO. v. FREY.** (No. 1891.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 6, 1918. Rehearing Denied Feb. 14, 1918.)

1. REMOVAL OF CAUSES ⬥74 — ACTION ON NOTES AND GUARANTY—INTEREST AND AT-TORNEY'S FEES.

Where the payee sued on notes and against the guarantor for the interest and attorney's fees accrued and not paid prior to the due date of the notes, the amount in controversy was the amount of the interest and attorney's fees, and not the amount of the notes, though the guarantor denied its liability and the judgment might be pleaded as res judicata in any future action against the guarantor.

2. JUDGMENT ⬥586(1) — CONCLUSIVENESS — RES JUDICATA.

The distinction between a judgment operating as estoppel to further litigation of a particular question of fact and one which is a complete bar to a second suit is that the former may be invoked when there is an identity of parties and issues, and the latter only when there is also identity of subject-matter.

3. REMOVAL OF CAUSES ⬥48—RIGHT TO RE-MOVE—SEPARABLE "CONTROVERSY."

To entitle a nonresident defendant to re-moval of the cause to the federal court under U. S. Comp. St. 1916, § 1010, the controversy as to him must be separable from that against resident codefendants, the word "controversy" meaning matter in dispute, in passing on which the court must look to the cause of action as set out in the petition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Controversy.]

4. REMOVAL OF CAUSES ⬥49(2)—RIGHT TO REMOVE—SEPARABLE CONTROVERSY.

To justify a separation of the defendants joined in a suit, it is not enough that they may be, at the election of the plaintiff, proceeded against either jointly or separately, but there must be more than one cause of action.

5. REMOVAL OF CAUSES ⬥49(2) — RIGHT TO REMOVE—SEPARABLE CONTROVERSY.

In view of Rev. St. 1911, art. 587, as to suing indorsers jointly with the principal obligors, and article 1842, providing that no judgment shall be rendered against a surety unless a judgment has been previously or is at the same time rendered against the principal, an action by the payee of a note against the maker, and a guarantor by separate instrument, for interest in default and for attorney's fees, brought before the due date of the note, is not separable so as to entitle nonresident guarantor to removal of the cause.

6. CORPORATIONS ⬥338(2) — CONTRACTS — ULTRA VIRES ACTS—ESTOPPEL.

A corporation which guaranteed a note and received a benefit therefrom could not set up the ultra vires character of its guaranty as a defense to an action for delinquent interest and attorney's fees on the note.

7. CORPORATIONS ⬥389—CONTRACTS—ULTRA VIRES ACTS—ESTOPPEL.

Evidence *held* to show that the corporation which guaranteed a note received a benefit thereunder so as to estop it to assert the ultra vires character of the transaction.

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Action by Mrs. Leona Frey against the Parlin & Orendorff Implement Company and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

Etheridge, McCormick & Bromberg, of Dallas, for appellant. A. P. Park and Moore & Hardison, all of Paris, for appellee.

HODGES, J. The appellee in this suit seeks a judgment against W. A. McCullough as the maker, and the Parlin & Orendorff Implement Company as the guarantor, of two promissory notes for $2,500 each. Both notes were dated June 6, 1912; one was due January 1, 1919, and the other one year later. Each bore interest at the rate of 8 per cent. per annum, which was payable annually on January 1st. Both notes contained stipulations for the payment of attorney's fees in the event they were placed in the hands of an attorney for collection or suit was instituted thereon. Attached to the notes was the written guaranty of the Parlin & Orendorff Implement Company. The plaintiff's amended original petition, on which the case was tried, contained the usual averments in suits on promissory notes, copies of which were attached as exhibits and made a part of the petition. It was also alleged that the written guaranty of the Parlin & Orendorff Implement Company was executed and delivered contemporaneously with the notes, and was based upon the same consideration, and that interest amounting to $1,200, was due and unpaid; that although the principal of the notes had not matured, the appellant, Parlin & Orendorff Implement Company, had denied its liability thereon as a guarantor. The plaintiff asked for judgment against McCullough and the Parlin & Orendorff Implement Company for the amount of the notes, principal, interest, and attorney's fees, and, in the alternative, for the amount of interest due and the attorney's fees thereon. The petition also alleged that the appellant was a foreign corporation, with its general office in Dallas, Tex. On the day the defendants were required to answer, the appellant, Parlin & Orendorff Implement Company, presented its petition and bond for a removal of the case against it to the United States District Court. The trial judge, being of opinion that no separable controversy was shown, refused the application. The appellant thereafter filed its answer, which included a general denial, and specially pleaded that the guaranty relied on was an ultra vires contract. In a trial before the court without a jury judgment was rendered in favor of the appellee for the accrued interest and attorney's fees, aggregating the sum of $1,428.41. The Parlin & Orendorff Implement Company alone has appealed.

The several assignments of error appearing in the appellant's brief present two questions: (1) Was the appellant entitled to have the suit against it removed to the federal court? (2) Was the written guaranty sued on an

ultra vires contract? The right of removal is resisted upon two grounds: (1) Because the amount involved is less than $3,000, and not within the jurisdiction of the federal court; and (2) because the grounds upon which it was sought to hold the appellant liable did not present a separable controversy. Both the pleadings and the evidence show that while the notes and contract of guaranty were separate instruments, they were executed and delivered at the same time. It was also shown by the evidence that the execution and delivery of appellant's written guaranty was a condition upon which the notes were to be accepted by the appellee.

[1] If the amount involved in this suit includes only the interest then due upon the notes and the attorney's fees, which aggregate less than $3,000, that settles the question of removal. But the appellant contends that the notes themselves are involved, and that a judgment rendered in this suit settles the issue of appellant's liability as a guarantor for the whole amount which can be pleaded as res adjudicata in any future action thereon. It is true the appellee alleged in her petition that the appellant was denying its liability for any part of the indebtedness evidenced by the notes, and asked for a judgment for the full amount of the principal sum, together with interest and attorney's fees; but she failed to allege any facts legally sufficient to authorize a recovery. It appeared from the face of her petition that neither of the notes was due, and that she was entitled to recover only the interest which had then matured, together with attorney's fees thereon. The fact that the appellant denied its liability was not sufficient to authorize the rendition of a premature judgment. N. Y. Life Ins. Co. v. English, 96 Tex. 268, 72 S. W. 58. In suits of this character, the amount in controversy is the sum for which judgment may be rendered, and that is to be determined by the substantial averments of the petition, not by the prayer for relief. Wells Fargo Express Co. v. Crittenden, 189 S. W. 296; W. U. Tel. Co. v. Arnold, 97 Tex. 365, 77 S. W. 249, 79 S. W. 8; Ainsa v. Moses, 100 S. W. 791. In this case the accrued interest and attorney's fees furnished the limit of the relief to which the appellee was entitled under her pleadings and a favorable state of the evidence. Had this aggregate been less than $500, the district court could not have entertained jurisdiction. Each installment of interest as it matured gave rise to a distinct cause of action, and a suit therefor might have been instituted in any court having jurisdiction of the amount then payable. N. Y. Life Ins. Co. v. English, supra; First National Bank v. Lyon-Gray Lumber Co., 194 S. W. 1152; Continental Casualty Co. v. Morris, 46 Tex. Civ. App. 394, 102 S. W. 773; Weiler et al. v. Henarie, 15 Or. 28, 13 Pac. 614.

[2] We may concede that the appellant's liability as a guarantor for the principal of the two notes will be concluded by the judg-ment rendered in this case; but that does not necessarily imply that the principal of the notes constitutes the subject-matter of this suit. When by the terms of a contract the right to prosecute successive causes of action is given, it may often happen that in the determination of the first controversy defenses are presented and passed upon which apply with equal force to the' contract in its entirety or to any one of the actions thereafter accruing; as, for instance, where the execution of the contract itself is denied, or, as in this case, where the corporate authority to enter into the particular contract is pleaded. In such cases the questions actually raised and decided in the first suit cannot be litigated a second time in any subsequent action based upon the same contract. Thompkins v. Hooker et al., 200 S. W. 193, recently decided by this court; Cromwell v. Sac County, 94 U. S. 356, 24 L. Ed. 195; Lbr. Co. v. Buchtel, 101 U. S. 638, 25 L. Ed. 1073. That result, however, would follow in any suit where the parties are the same, even though the subject-matter be different; hence the mere fact that this judgment would be res adjudicata as to some of the issues of fact affecting the appellant's liability in future controversies growing out of this contract does not furnish the true criterion for determining what is the subject-matter now involved. There is a recognized distinction between a judgment which operates merely as an estoppel to the further litigation of a particular question of fact, and one which is a complete bar to a second suit. As will be seen in the cases above referred to, the former may be invoked when there is an identity of parties and issues, while in order to make the latter available there must also be identity of subject-matter. The defenses presented in this suit are primarily designed to defeat this particular action for accrued interest, and no other. The legal effect of the adjudication here made upon a future action for the principal debt is the incidental result of this proceeding. The judgment here rendered would not bar a suit upon the notes for their principal or any future installment of interest. To enforce the collection of these, other suits must be brought at the proper time. The scope of such incidental consequences may be considerably enlarged by the character of the defendant's pleadings. The answer may be so framed as to require an adjudication of all the possible defenses that may be urged in any future controversy growing out of the same contract. It may even go further and seek affirmative relief in the cancellation of the entire contract. The legal effect of an adverse judgment would logically be as broad as the issues of fact decided; but the jurisdiction of the federal court must be ascertained from the pleadings of the plaintiff, not from the issues injected by the answer of the defendant. In this case the trial court rendered a judgment in favor of the plaintiff for all the relief warranted by her pleadings. This, being less-

than $3,000, was not within the jurisdiction of the federal court, and for that reason alone the court was justified in refusing the application for a removal.

[3] But the writer is of the opinion that this refusal was justified upon the further ground that the case as presented in the appellee's amended original petition did not disclose a separable controversy. The provisions of the federal statute relating to that subject are to be found in section 28 of the Judicial Code (Act Cong. March 3, 1911, c. 231, 36 Stat. 1087) and section 1010 of the United States Compiled Statutes for 1916, Annotated. The language of that provision is:

"When in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the District Court of the United States for the proper district."

It has been repeatedly held that where a nonresident defendant is joined in the same suit with one or more defendants who reside in the state where the suit is brought the controversy, in so far as it affects the nonresident, must be separable, in order to clothe the latter with the right of removal to a federal court. The question here presented is, Does the cause of action set out in the plaintiff's petition disclose a separable controversy? The word "controversy" as here used evidently means the matter in dispute. If this is a compound of several distinct elements or causes of action which may be divided in the separation of parties so that each controversy may be fully determined without the joinder of other defendants, then it is separable. In passing upon that question courts must look to the cause of action as set out in the plaintiff's petition. Ala. & G. S. Ry. Co. v. Thompson, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, 4 Ann. Cas. 1147; Cincinnati, etc., Ry. Co. v. Bohon, 200 U. S. 221, 26 Sup. Ct. 166, 50 L. Ed. 448, 4 Ann. Cas. 1152. The cases referred to were suits for personal injuries against nonresident railway corporations, in which were joined as parties defendant the employés whose negligence caused the damages. In each instance the right of removal was denied upon the ground that the controversy was not separable. In the first case Justice Day quotes approvingly the following from an earlier decision of the court:

"It is well settled that an action of tort, which might have been brought against many persons, or against any one or more of them, and which is brought in a state court against all jointly, contains no separate controversy which will authorize its removal by some of the defendants into the Circuit Court of the United States, even if they file separate answers and set up different defenses from the other defendants, and allege that they are not jointly liable with them, and that their own controversy with the plaintiff is a separate one; for, as this court has often said, 'a defendant has no right to say that an action should be several which the plaintiff seeks to make joint.' A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings."

In a subsequent portion of the opinion the following language is used:

"It is urged with much earnestness by the learned counsel for the company that this view works a surrender of the right of determination of federal rights in the federal courts, and deprives nonresident citizens of their rights to appeal to those tribunals. The decision of a state court that such actions as the present might be joint at common law would have no controlling effect in the federal courts in determining the questions in causes properly before them. And the question here is, not what is the rule of the federal courts in similar cases, but is, what controversy has Congress made removable in the act under consideration? Congress has not said, whatever it might do, that controversies between citizens of different states shall be removable wherein it is sought, contrary to the law as administered in the federal courts, to hold a citizen of another state to joint liability and tort with a citizen of the state where the action is brought. The fact that the state court may take a different view from the courts of the United States of the common law as to the character of such actions, and the right to prosecute them in form joint as well as several, affords no ground of removal. The federal courts in some states hold a different rule as to the doctrine of fellow servants from that administered in the state courts, and in other ways administer the common law according to their own views. It has not been suggested that a right of removal should arise from such differences. No more has Congress given the right where the state permits an action to be prosecuted jointly which would be held to be several only in the courts of the United States. * * * The test of such controversy, as this court has frequently said, is the cause of action stated in the complaint. That is joint in character, and there is no attack upon the good faith of the action."

The second case cited above originated in Kentucky and involved the application and construction of a Kentucky statute and a portion of the Kentucky Constitution. The laws of Kentucky gave to the injured party a joint and several cause of action for injuries resulting in death against the servant whose negligence caused the injury and the employing corporation. After quoting from the statute and Constitution of Kentucky and from decisions rendered by its highest court construing those provisions, Justice Day said:

"A state has an unquestionable right by its Constitution and laws to regulate actions for negligence; and where it has provided that the plaintiff in such cases may proceed jointly or severally against those liable for the injury, and the plaintiff in due course of law and in good faith has filed a petition electing to sue for a joint recovery given by the laws of the state, we know of nothing in the federal removal statute which will convert such action into a separable controversy for the purpose of removal, because of the presence of a nonresident defendant therein properly joined in the action under the Constitution and laws of the state wherein it is conducting its operations and is duly served with process."

[4, 5] It is true that in both of the above cases the suits were founded upon torts; but the ruling principle governing the right of removal is not different from that which

should be applied in suits founded upon contract. To justify a separation of the defendants joined in a suit it is not enough that they may be at the election of the plaintiff proceeded against either jointly or separately, but there must be more than one cause of action. Geer v. Mathieson, 190 U. S. 428, 23 Sup. Ct. 807, 47 L. Ed. 1122. Under the laws of Kentucky the defendants in the Bohon Case, cited above, might have been sued either jointly or separately. The plaintiff, having elected to join them in one action, could not be compelled to separate them in order that the nonresident might have its trial in the federal court.

But it may be said that the liability of all the parties responsible for a tort is joint in its inception, and for that reason alone the cause of action is inseparable. That fact is unimportant unless the incipient conditions out of which the liability arises materially affects the method of enforcing the remedy. If by the local laws all the parties responsible for a debt may be jointly sued in one action, regardless of when or how their respective liabilities originated, it is difficult to perceive any well-founded reason for the distinction. The removal statute is one which applies only to the remedy, and has no concern with the manner or form by which different defendants become bound for the same debt, except in so far as that manner or form affects the remedy. If the subject-matter of the suit is the same as to all the defendants —as here, where only one debt is involved —the cause of action must be one and the same. The plaintiff does not secure that full relief to which she is entitled until she secures a judgment against all the parties bound for the payment of her debt. This case is materially different from one in which are joined defendants whose obligations do not overlap or touch. At common law the time and manner in which parties become obligated for the payment of commercial paper was important in determining the remedy, that is, whether it was joint or several; and if joint, to what extent the parties defendant might be collectively proceeded against. Kildare Lbr. Co. v. Atlanta Nat. Bank, 91 Tex. 95, 41 S. W. 64. But our statute has abolished many of those rules, and it is now permissible to unite as parties defendant many who could not have been joined at common law. Article 587 of the Revised Civil Statutes is as follows:

"Assignors, indorsers and other parties not primarily liable upon any of the instruments named in this title, may be jointly sued with their principal obligors, or may be sued alone in the cases provided for in articles 1842 and 1843."

Here we have an express permission to join sureties and guarantors in suits against the principal obligor on promissory notes. Article 1842 provides:

"The acceptor of any bill of exchange, or any other principal obligor in any contract, may be sued either alone or jointly with any other party who may be liable thereon; but no judgment shall be rendered against such other party not primarily liable on such bill or other contract, unless judgment shall have been previously, or shall be at the same time, rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided."

Article 1843 provides, in substance, that the assignor, indorser, guarantor or surety upon a note or contract may be sued alone without the necessity of previously suing the principal obligor when the latter resides beyond the limits of the state or in such part that he cannot be reached by the ordinary process of law, or when his residence is unknown, or when he is dead or is actually or notoriously insolvent.

If this state has the right to enact those laws and thus regulate actions on commercial paper originating within its limits—to prescribe the form of the remedy—as is held in the Bohon Case, then the appellee in this suit has exercised her lawful privilege. If after having done this she may be compelled to submit to a severance by a removal to the federal court at the instance of the appellant, the local law is to that extent annulled. It is clear, I think, from the language used in the cases cited, that no such assumption of authority was intended by Congress in the enactment of the removal statute.

In this case there is but one cause of action stated in the appellee's petition; the interest and attorney's fees now due upon the notes. This constitutes one debt, and can be satisfied by one payment made by either of the parties responsible therefor. While those parties obligated themselves by the execution of separate instruments—one as the principal and the other as a guarantor—all originated at the same time and were based upon the same consideration; that is, the sale to McCullough of the stock owned by the appellee. It was also alleged and proved upon the trial that the execution of the guaranty by the appellant was a condition upon which McCullough's notes were accepted. Under such circumstances the appellant's contract is as much a part of the notes as if its guaranty had been indorsed upon them. The appellee had the right to proceed against either of those parties by separate suits or to join them in one action. If the appellant has the right of removal, then the appellee may be compelled to divide her cause of action and bring two suits instead of one for the collection of the same debt. In the opinion of the writer the refusal of the application for removal is sustained by the following authorities in addition to those previously cited: Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528; Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161, 29 L. Ed. 331; German Merc. Co. v. Gas Service Corp. (D. C.) 228

Fed. 827; Moore v. Los Angeles (C. C.) 89 Fed. 73.

[6] As a defense to this suit against it the appellant answered that it was a private corporation organized under the laws of the state of Illinois for the purpose of manufacturing and dealing in agricultural implements and vehicles, etc., and that it had no corporate authority to guarantee the commercial paper of third parties. The reply to that plea of ultra vires is that the appellant received a benefit; that the ultimate purpose of the guaranty was to secure that benefit, and was therefore executed in furtherance of the appellant's legitimate business. In support of its contention that the contract was ultra vires counsel for appellant refer to numerous authorities, among which is Deaton Grocery Co. v. International Harvester Co., 47 Tex. Civ. App. 267, 105 S. W. 556. Justice Key, who rendered the opinion in that case, cites numerous authorities, and quotes at length from North Side R. R. Co. v. Worthingon, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778, the leading authority in this state upon the principle invoked by the appellant. In that case it is held, as in the case decided by Judge Key, that in order to bind a private corporation as a surety or guarantor for a third party upon the ground that it has received a benefit from the transaction, it must appear that the benefit was immediate and direct, and not indirect. But a statement of the rule in those general terms does not solve the principal difficulties usually presented in this character of cases. It is frequently more troublesome to apply the rule then to find out what it is.

[7] We think the facts justify the conclusion reached by the trial court that the appellant did receive a direct benefit as the consideration for its guaranty. The testimony showed that O. C. Frey, the husband of the appellee, and from whom she acquired the stock sold to McCullough, died in 1912. At the time of his death he was engaged in conducting a hardware and implement business under the name of O. C. Frey Hardware Company, in Paris, Tex. He had been engaged in that business for a number of years. The O. C. Frey Hardware Company was a private corporation, in which O. C. Frey owned practically all of the stock. Long prior to his death he had been doing business with the appellant, Parlin & Orendorff Implement Company, the annual amount of which was estimated at from $75,000 to $100,000. It was the custom of the O. C. Frey Hardware Company to take goods from the appellant on consignment in connection with its purchases from the appellant and other sources. The consigned goods were usually settled for by the indorsement and transfer by the O. C. Frey Hardware Company to the appellant of notes taken from customers in the retail trade. At the time of the death of O. C. Frey the O. C. Frey Hardware Company had on hand goods of the appellant held on consignment to the amount of about $40,000. It owed the appellant a large amount of money; in fact, the testimony shows that the appellant was by far its largest creditor. The stock held by O. C. Frey in the O. C. Frey Hardware Company passed upon his death to the appellee, his widow. She, through an agent, began to look for some one to purchase her stock, and who would carry on the business. The appellant also took considerable interest in finding a purchaser. The names of two men were mentioned, McCullough, one of the defendants in this suit, and another party by the name of Roe. The appellee through her agent was about to conclude a trade with Roe for the sale of her stock in consideration of $30,000. According to the testimony of this agent, the manager of the appellant company interfered and prevented the trade. The appellant's manager insisted that the stock should be sold to McCullough, and promised that in the event it was the appellant would guarantee a part of the purchase price. It appears from the evidence that McCullough had been doing business at another point in Texas, and had been receiving goods on consignment from the appellant, disposing of them in a manner similar to the business conducted by the O. C. Frey Hardware Company at Paris. Mrs. Frey did not feel at liberty to disregard the wishes of the appellant in selecting the purchaser of her stock, for the reason that the appellant was a large creditor, and probably for the further reason that it had considerable goods in the hands of the O. C. Frey Hardware Company on consignment and would be interested in the further conduct of that business. It was finally agreed that if the appellant would guarantee the two notes described in the appellee's petition, the sale to McCullough would be made. The notes and the guaranty were executed and delivered at the same time and as parts of the same transaction. By installing McCullough as the owner and manager of the O. C. Frey Hardware Company appellant secured not only a customer, but an agent who would continue to receive and handle its goods on consignment. The state of the evidence was such that the court might have concluded that McCullough and the appellant had an understanding by which the O. C. Frey Hardware Company would, under the new management, continue the same relations and course of dealing formerly pursued. The evidence shows that the appellant took great interest in the conduct of the business of the O. C. Frey Hardware Company after the purchase of the stock by McCullough. It is undisputed that the appellant had its principal office at Dallas; that the by-laws of the O. C. Frey Hardware Company were prepared by its attorney; that in advance of a stockholders' meeting minutes of all that was done were prepared in the office of that attorney; and that the meeting of the stockholders in Paris

was merely formal and only a ratification of what had previously been determined upon. It is further shown that during the time McCullough had control an agent of the appellant had free access to the books of his company, audited them, and made reports to the appellant. Under this state of the evidence the court had a right to conclude that in the execution of this contract of guaranty the appellant was furthering its own interest and received a direct benefit.

Appellee refers to numerous authorities to sustain this judgment, one of which is Munoz v. Brassel, 108 S. W. 417, in which a writ of error was refused by the Supreme Court.

The judgment of the district court will be affirmed.

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes