Comanche Cotton Oil Company v. Mrs. F. M. Browne.

No. 1549. Decided May 2, 1906.

**1.—Corporation—Authority.**

A corporation is empowered to do all acts, not forbidden by law, which may be reasonably necessary for the accomplishment of the purposes of its creation—as for a cotton-oil mill to own and operate cotton gins when necessary. (P. 662.)

**2.—Same—Stock Subscription—Departure from Purpose.**

A subscriber to stock in a cotton-oil mill, to be erected and operated by a corporation to be organized by the subscribers, was not released from obligation to take and pay for such stock by the subsequent incorporation of the proposed company with the purpose expressed in its charter, "to operate a cotton-seed oil mill, and to do all things necessary and incident to the maintenance and operation of the cotton-seed oil mill business, and to erect, own and operate whatever cotton gins may be necessary and proper as feeders for said oil mill." The only authority, with respect to gins, being to own and operate such as were necessary to the business of the oil mill, the company could exercise such power though not mentioned in its charter. (Pp. 661–663.)

**3.—Same—Remedy of Subscriber.**

Where a corporation embarks in business not contemplated in its stock subscriptions nor authorized by its charter, the subscribers have their remedy by action to prevent such departure from its purposes, but are not relieved thereby from liability to take and pay for their stock. (P. 663.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Erath County.

The cotton oil company sued Mrs. Browne on subscription to its stock and defendant had judgment. Plaintiff appealed and on affirmance obtained writ of error.

*E. C. Gaines,* for plaintiff in error.—The Court of Civil Appeals erred in holding that the purposes expressed in the charter of plaintiff in error showed a material, radical and fundamental variance from the purposes intended by the subscription, for the following reasons:

1. Because the addition of new privileges and powers of the same general nature of the powers and purposes contemplated, leaving intact all original purposes and powers, and merely adding other related powers, incidental and auxiliary, is not in law a fundamental change.

2. Because the expression in the charter of a power or purpose that would, without expressing it, have been implied to a corporation with its purposes expressed in the literal terms of the subscription contract, could not be a fundamental change or a material change at all.

3. Because the general law of Texas relating to private corporations was a part of the subscription contract, and that general law is a declaration merely of the common law, by which specific decisions have illustrated that a corporation has implied power to do whatever is necessary, in the sense of being fairly suitable and convenient.

4. Because, since the general law is a part of the subscription contract, the defendant in error agreed, in the language of article 649, that a majority of the subscribers might make any change or amendment,

whether fundamental or not, if it could ·have been included in the original contract of subscription.

On question of effect of statute as part of subscription contract: Rev. Stat., arts. 649, 647, 652; Rev. Stats., Ohio, sec. 3238, in connection with Picard v. Hugehy, 53 N. E. Rep., 133, and Nugent v. Putnam Co., 19 Wall., 241; Bonnet v. Bank, 24 Texas Civ. App., 613; Geison v. Mortgage Co., 102 Fed. Rep., 584; Mansfield, etc., Ry. Co. v. Brown, 26 Ohio St., 223. On question of implied power: Worthington v. Northside Ry. Co., 88 Texas, 562; Green's Brice's Ultra Vires, secs, 87, 88; Lyde v. Eastern Bengal Ry., 36 Beav., 10; Union Agr. Assn. v. Neill, 31 Iowa, 95; Texas & St. L. Ry. Co. v. Roberts, 60 Texas, 545; Fort Worth City Co. v. Smith Bridge Co., 151 U. S., 294; Jackson, etc., Nav. Co. v. Hooper, 160 U. S., 514; 5 Thompson on Corporations, sec. 5874; Central Gas Co. v. Cap. Dairy Co., 53 N. E. Rep., 711; Ellerman v. Stockyard Co., 23 Atl. Rep., 287; Atkins v. Ry. Co., 31 So. Rep., 166; Wheeler v. San Francisco Ry. Co., 31 Cal., 46; Shawmut Bank v. Plattsburg Ry. Co., 31 Vt., 491. On the question of what is a fundamental change: San Antonio v. Jones, 28 Texas, 19; Nugent v. Putnam Co., 19 Wall., 241; Town of East Lincoln v. Davenport, 94 U. S., 801; Banet v. Alton & S. Ry. Co., 13 Ill., 504; Pacific Ry. Co. v. Hughes, 22 Mo., 291; 1 Thompson on Corporations, sec. 1274; Cook on Stock and Stockholders, sec. 499; Haskell v. Worthington, 7 S. W. Rep., 481.

*Goodson & Goodson,* for defendant in error.—The contract of a party signing a subscription list prior to the charter and for the purpose of procuring a charter for the purposes stated in the subscription list is governed by the law relating to any other contract, and can not be changed without his consent. Therefore if after subscription which states a definite purpose of incorporation a charter is afterwards procured · by a part of the stockholders for a different or other or additional purposes than named in the subscription list, without the consent of the subscriber, he can not be held liable because of the change in the contract. Baker v. Fort Worth Board of Trade, 8 Texas Civ. App., 560; Dorris v. Sweeney, 60 N. Y., 463; 6 Am. Dec., 139; 8 Am. Dec., 32; 40 Am. Dec., 354; Katanna Land Co. v. Jernegan, 126 Mass., 155; Chicago, etc., Railway v. Allerton, 18 Wall., 234; Greenbrier Industrial Exposition v. Rodes, 37 West Va., 738, 17 S. E. Rep., 305; Bucher v. Dillsburg & M. R. R. Co., 76 Pa. St., 306; Southern Hotel Co. v. Newman, 30 Mo., 118; Richmond Street Ry. Co. v. Reid, 83 Ind., 9; Burrows v. Smith, 10 N. Y., 550; Lawson's Rights and Remedies, 735, sec. 441; Cook on Stockholders, 632, sec. 500, and note 1 on page 633; Clark on Corporations, p. 281, sec. 100.

BROWN, ASSOCIATE JUSTICE.—The plaintiff in error sued Mrs. F. M. Browne to recover of her $3,000, the price of stock in the said company for which she subscribed. The·pleadings by both parties were sufficient to admit the evidence; and, there being no issue made upon the pleadings, we omit a statement of their contents. The facts are stated by the Court of Civil Appeals as follows:

"On March 15, 1904, the appellee together with F. H. Oberthier and

a number of other citizens of Comanche, desiring to erect and operate a cotton seed oil mill at that place, prepared and signed the following subscription contract: 'State of Texas, county of Comanche. We, the undersigned, subscribe the amounts opposite our names as stock that we agree to take in a cotton oil mill intended to be erected and operated in the city of Comanche, Texas. It is intended by us to form a corporation and operate the buisness of said company as a corporation, which is to be organized at a meeting of the subscribers hereto when fifty thousand dollars is subscribed, that being the intended capital stock. We agree to pay one-fourth of our subscription within thirty days from this date, and another one-fourth thirty days later, and the balance November 1, 1904.' Appellee signed this contract and set opposite her name the sum of $3,000. The necessary amount of stock having been subscribed, there was a meeting of the subscribers at which, however, appellee was not present, and a charter was formally executed, which was duly accepted and filed with the Secretary of State on April 11, 1904, and the plant was immediately erected, the machinery installed, and the cotton oil mill set in operation, and it is now an actual, going concern. The charter was in all things regular in form but the purposes thereof are thus therein stated: . . . The purposes of said corporation shall be to operate a cotton seed oil mill; and to do all things necessary and incident to the maintenance and operation of the cotton seed oil mill business; and to erect, own, and operate whatever cotton gins may be necessary and proper as feeders for said oil mill.' "

The case was submitted to the judge on the trial below, who entered judgment for the defendant without making any conclusions of fact.

If the charter of the Comanche Cotton Oil Company had expressed the purposes of its erection in the language of the subscription contract— "to erect, own, and operate a cotton seed oil mill"—the corporation would be empowered to do all such acts as might be reasonably necessary for the accomplishment of the purposes of its creation; provided, the act done was not forbidden by law. (4 Thompson on Corporations, sections 5641, 5642.) In the latter section the following language is used: "It is but another statement of the principle of the preceding section to say that, although corporations have only such powers as are granted to them in their charters and governing statutes, yet when an express power is granted to do a particular act, this carries with it, by implication, the right to do any act which may be found reasonably necessary to effect the power expressly granted." (Portzman v. Ind. R. R. Co., 9 Ind., 467.) Therefore, if one or more cotton gins should be found reasonably necessary to the operation of the cotton seed oil mill, the corporation would be authorized to operate such necessary cotton gins. This provision of the charter as it was filed and to which objection is made—"and to erect, own, and operate whatever cotton gins may be necessary and proper as feeders for said oil mill"—confers upon the corporation no power to own and operate any cotton gins which are not necessary to the operation of the cotton seed oil mill. Therefore, since the language added to that of the contract confers no more power upon the corporation than the law would have implied, without it, there is no material addition to the purposes of the corporation and Mrs. Browne's

liability on the contract of subscription is not discharged. (Union Agricultural and Stock Ass'n v. Neill, 31 Ia., 97.) In the case cited the court said: "If the articles had remained as originally drawn, or if they had been entirely silent with regard to duration and mode of renewal of the corporation, the law would have attached to them the same consequences as now. In either case the corporation would endure twenty years from the date of its organization, with a right of renewal by a vote of three-fourths of the stockholders. It follows that the changes are entirely immaterial. The defendant could not possibly be prejudicially affected by them."

The charter as it was framed does not empower the corporation to operate cotton gins as a business independent of their necessity as a support for the oil mill business; and if it has engaged in the operation of cotton gins beyond the necessity for them as aids to the oil business, that constitutes no defense to the subscription contract; but Mrs. Browne and other stockholders could secure proper relief by application to the courts.

The trial court erred in giving judgment against the corporation and the Court of Civil Appeals erred in affirming that judgment, for which error the judgments of both courts are hereby reversed and the cause is remanded to the District Court for further trial.

*Reversed and remanded.*