ITASCA ROLLER MILL & ELEVATOR CO.
v. WOOTEN.  (No. 8698.)

(Court of Civil Appeals of Texas.  Dallas.
Nov. 25, 1922.  Rehearing Denied
Jan. 6, 1923.)

1. Corporations ⊜374—Corporations, limited in operation to purposes named in statutes and charters, but having implied right to do things necessary to accomplish objects.

Corporations are creatures of statute, and are limited in their operation and transactions to the purposes named in the enabling statutes and their charters, though, beyond the expressed powers granted, there is by implication a right to do those things necessary and proper to accomplish the objects for which the corporation was formed.

2. Corporations ⊜374 — Elevator company held authorized to sell seed wheat.

An elevator company organized under Rev. St. 1911, art. 1121, § 28, authorizing organization of corporations for the "sale and storage of products and commodities by grain elevator" and whose charter purpose clause authorizes

"selling of all kinds of farm products" is authorized to sell seed wheat.

3. Corporations ⊜398(2)—No authority to act for corporation arises from being stockholder.

The mere fact that an agent in charge of an elevator belonging to a corporation is a stockholder therein does not extend his authority to act for it.

4. Corporations ⊜410—Agent in charge of elevator impliedly authorized to sell seed wheat.

An agent in charge of an elevator is impliedly authorized to sell seed wheat.

5. Corporations ⊜426(10)—Agent's contract is ratified by accepting benefits thereof.

Acceptance by a corporation of the benefits of its agent's contract, with no attempt to repudiate, is a ratification thereof, and it also estops the corporation from thereafter avoiding the contract under a want of authority.

6. Corporations ⊜388(2)—Accepting benefit of contract estops assertion it is ultra vires.

Accepting the benefits of a contract estops the corporation from thereafter asserting that it was ultra vires.

7. Sales ⊜406—Submission of samples of seed wheat to Commissioner of Agriculture for testing unnecessary, before action for delivery of wrong kind of seed.

Submission to the Commissioner of Agriculture of samples of seed for testing, as required by Acts 36th Leg. 2d Called Sess. (1919) c. 62 (Vernon's Ann. Civ. St. Supp. 1922, arts. 14¾ to 14¾j, inclusive), before bringing an action for a lack of viability or purity, is unnecessary, where the action is for delivery of the wrong kind of seed, as delivery of winter wheat when spring wheat was ordered.

8. Sales ⊜418(19)—Where wheat sold and planted as spring wheat proves to be winter wheat, grower entitled to damages.

Where wheat sold and planted as spring wheat proves to be winter wheat, the grower is entitled to damages measured by the difference between the value of the crop produced from the seed delivered and the value of that which would have been produced had the seed been the kind ordered.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by Roy Wooten against the Itasca Roller Mill & Elevator Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Wear, Wood & Wear, of Hillsboro, for appellant.
Collins, Dupree & Crenshaw, of Hillsboro, for appellee.

SERGEANT, C. J. Appellee, a tenant farmer living near Itasca, desiring to plant a portion of his land in spring wheat, went to appellant, on February 24, 1920, for the pur-

pose of purchasing seed wheat for immediate planting. C. E. Eiser, with whom he dealt, was a stockholder in, and manager of, the business of appellant at Itasca, and upon such application of appellee for seed wheat, sold him 25 bushels for $75 and placed the funds in the treasury of the appellant company. At the time of the sale, Eiser knew that appellee was purchasing the wheat for the purpose of planting it for a spring crop and represented to him that this grain was spring wheat and suitable for the purposes for which it was purchased. Appellee was an experienced farmer and properly prepared his ground and planted his wheat, and in due time it came up. However it failed to mature and soon withered. Upon investigation, appellee learned that it was not spring wheat but fall wheat, and therefore not the character of grain he had purchased. Accordingly he filed suit for the reasonable cash market value of the crop which would have been produced had the grain been spring wheat, less the reasonable and necessary cost of harvesting and threshing it. The case was submitted to the jury upon special issues, all of which were found in favor of appellee. From the judgment rendered on such findings, appellant has appealed to this court.

[1, 2] Itasca Roller Mill & Elevator Company is a corporation incorporated under Texas laws, for the purposes set out in section 28 of article 1121 of the Revised Statutes of Texas, which reads:

"The construction or purchase and maintenance of mills, gins, cotton compresses, grain elevators, wharves, and public warehouses for the storage of products and commodities, and the purchase, sale and storage of products and commodities by grain elevator and public warehouse companies, and the loan of money by such elevator or public warehouse companies."

The purpose clause in appellant's charter does not follow strictly the wording of the statute, but reads, "milling corn and wheat; buying and selling of all kinds of farm products and elevator and storage business." It is contended that the sale of grain by the corporation for seed purposes is not authorized by the statute nor by the purpose clause in the charter and therefore ultra vires. "Corporations are mere creatures of the statute and are limited in their operations and transactions to the purposes named in the statute and in the charter by which they are created. They cannot go beyond the powers therein conferred, and any act outside such authority is not binding. But with the express powers therein granted, there is by implication the right to do those things necessary and proper to reasonably carry out the objects for which such corporation was formed." We think the language of the statute authorizing "sale and storage of products and commodities by grain elevators," and the words of the purpose clause in the charter providing for the "selling of all kinds of farm products," sufficiently authorize a sale by grain elevators of wheat for planting purposes. Therefore the sale of the seed wheat in the present case was within appellee's corporate powers and not ultra vires. Had the language of the charter been even less explicit, still, under the general authority to maintain a grain elevator, appellant would have the implied power to sell seed wheat for planting purposes. In Hollis v. Marrs (Tex. Civ. App.) 207 S. W. 367, it was held that a cotton seed oil corporation had the power to purchase cattle to be fed on cotton seed hulls under the authority in its charter to sell "cotton seed and any and all products and by-products." In Comanche Cotton Oil Co. v. Browne, 99 Tex. 660, 92 S. W. 450, it was held that a cotton seed oil mill having authority "to own and operate a cotton seed oil mill," might lawfully own and operate cotton gins wherever necessary as an aid to its oil business. In Munoz v. Brassel (Tex. Civ. App.) 108 S. W. 416, it was held that a corporation having authority to buy and sell liquors at wholesale and retail might become surety on a retail liquor dealer's bond, on the theory that this was incident to its own business and calculated to promote it, in that it might thereby secure a customer for such surety's business.

[3, 4] Contention is made that the agent of the appellant corporation exceeded his authority in making the sale of the seed wheat to appellee, and that the corporation as his principal was not bound thereby. No express authority was conferred upon the agent by the corporation to sell grain for planting purposes and the mere fact that he was a stockholder did not confer on him such authority. But the corporation had placed the agent in charge of its mill and elevator at Itasca and had made him sole manager thereof, and thereby held him out to all dealing with such mill as the proper person with whom they should contract. This was sufficient authority to such agent to do any act in behalf of said corporation which the charter and statutes authorized. With whom can a customer of a corporation contract if not with those having the management and control of such corporation's business? Case v. Folsom (Tex. Civ. App.) 170 S. W. 1066.

[5, 6] Further, the corporation received and retained the $75 paid by appellee for the seed, and made no offer to refund the money. Acceptance by a principal of the benefits of a contract, with no attempt to repudiate the act of its agent in such transaction, constitutes a ratification of the agreement so made. This also estops the principal from thereafter avoiding the contract under either a claim of want of authority in the agent, or under a plea of ultra vires. In Kincheloe v. Hahn, 105 Tex. 231, 146 S. W. 1187, it was held that the corporation having obligated itself to furnish land, seed rice, and

water for irrigation, plaintiff to cultivate the land, harvest the crop, and give one-half to defendant, was estopped under its plea of ultra vires, having received the benefits of the contract made. In Parlin v. Frey (Tex. Civ. App.) 200 S. W. 1143, a corporation was held to be estopped on its plea of ultra vires in a suit against it for guaranteeing payment of a note, it having received a benefit from the transaction. In First National Bank v. Greenville Oil & Cotton Co., 24 Tex. Civ. App. 645, 60 S. W. 828, the court held that an estoppel existed barring the corporation's plea of ultra vires where it had retained the benefits of a contract to pay for goods sold on its guarantee. In Texas v. Dublin, 38 S. W. 404, a corporation having accepted the benefit of a contract was held estopped on its plea of ultra vires, even where its officers acted without the scope of their authority.

[7] Complaint is made that appellee is not entitled to maintain this suit by reason of having failed to comply with the provisions of that portion of the agricultural seed law contained in chapter 62 of the Acts of the Second Called Session of the 36th Legislature of 1919, and found in Vernon's Ann. Civ. St. Supp. 1922, arts. 14¾ to 14¾j inclusive, relating to the submission of samples to the Commissioner of Agriculture for examination and test. That portion of the act pertinent hereto reads as follows:

"Article 14¾e. Whoever buys or sells agricultural seeds, defined in section 1, of this act or mixtures of seeds as provided in section 3, of this act, for the use in this state for seeding purposes, may submit fair samples of such seeds to the Commissioner of Agriculture for examination, and test of purity and of viability, and said Commissioner of Agriculture shall cause such examination and test to be promptly made, and report thereon, and return to the sender. * * * Article 14¾g. No action for the recovery of damages or any liability whatsoever for any violation of any of the provisions of this act or for the breach of any legal duty or obligation in the sale of the agricultural seeds defined in section 1 of this act, or the sale of mixtures defined in section 3 of this act, shall be maintained by the buyer and against the vendor of such seeds, unless the claim or claims of such buyer are based upon properly drawn samples of such seed, from the bulk thereof, and examined in the way and manner provided in section 6 of this act."

Under the rules of construction a general statement immediately following a clause relating to a specific thing, must be considered as dealing with such specific item rather than with the subject generally a careful reading of the provisions of these two articles in the light of such rules shows that the suit which they authorize is upon the basis of the finding by the Commissioner of Agriculture, and relates only to the purity and viability of the seed. Had appellee followed the statute, drawn the samples and sent them to the Commissioner of Agriculture for test, the finding of such Commissioner would have been that the seed were free of noxious weeds, and therefore pure, that they possessed proper germinative qualities, and were therefore viable, and such finding would have been the basis for any action brought involving either purity or viability of the seed. But it is clear that this action is not brought on account of any lack of germinative qualities in the seed, for they came up; nor is it brought on account of any impure mixture in the seed, for no noxious weeds came up with the grain. The law will not require the doing of a useless thing, and the Legislature could have had in contemplation only the two grounds for suit named in the statute it passed. Had the statute contemplated the above course before it would permit a suit based upon misrepresentation as to the kind of seed sold, it would have been an attempt at an impairment of the obligation of contract and to such extent invalid. Having no such intention, the statute must stand, and no necessity exists for appellee to follow it as a prerequisite to maintaining this suit.

[8] The jury found by its verdict that appellee had purchased the seed for immediate planting for a spring crop upon representations by the seller that the same was spring wheat of the kind ordered, and that such representations were untrue in that the seed was fall wheat unsuitable for spring planting. Therefore appellee was entitled to recover the difference between the value of the crop produced from the seed delivered, and the value of that which would have been produced had the seed been the kind ordered. Texas Seed & Floral Co. v. Watson (Tex. Civ. App.) 160 S. W. 659; Handy v. Roberts (Tex. Civ. App.) 165 S. W. 37.

We conclude therefore that the sale of seed wheat for planting purposes, by a grain elevator corporation chartered under section 28 of article 1121 of the Revised Statutes, is within the corporate powers conferred by such section, and is reasonable, appropriate, and incident to the carrying on of the business specifically authorized by such statute; that the manager of a grain elevator corporation, who is actively and solely in charge of its business in a particular locality, does not exceed his authority in making a sale of seed wheat for planting purposes; that a corporation receiving the proceeds of the sale of seed by its manager and accepting and retaining the benefits of the transaction and failing to repudiate the act of its manager cannot escape liability for damage caused thereby, either upon the plea of ultra vires, or upon the plea that its agent had exceeded his authority; that the agricultural seed law contained in articles 14¾ to 14¾j inclusive of the Revised Statutes provides certain steps that may be taken as a basis for an action

for breach of a contract of sale involving the purity and germinative qualities of seed; but that such act does not require these steps to be taken as a prerequisite to maintaining a suit for damages for misrepresentation of the kind of seeds sold not involving their purity or their viability.

The judgment of the trial court is affirmed.