FARMERS' GIN CO. v. KASCH.  (No. 6866.)

(Court of Civil Appeals of Texas.  Austin. Nov. 4, 1925.  Rehearing Denied Dec. 9, 1925.)

1. Corporations ⬠370(3)—Corporation has no powers except those expressly or impliedly conferred by its charter.

A corporation derives all its powers from sovereignty creating it, and has none except those expressly or impliedly conferred by its charter.

2. Corporations ⬠374—Enterprise entered into by corporation must be reasonably necessary to conduct or furtherance of its main purpose, and require only reasonable expenditure of capital.

Enterprise entered into by corporation must be reasonably necessary to conduct and furtherance of corporation's main purpose, and must require only reasonable expenditure of corporation's capital.

3. Corporations ⬠457—Contract for purchase of cotton seed by corporation selling cotton gins held ultra vires.

Under Rev. St. 1925, art. 1349, contract made by manager of corporation, incorporated for purpose of selling cotton gins, whereby manager contracted for purchase of large amount of cotton seed, held ultra vires.

4. Corporations ⬠457—In absence of estoppel, custom of gins to purchase cotton seed for patrons would not make contract for purchase of cotton seed inter vires.

Custom of gins over state generally to purchase cotton seed for patrons would not make contract of gin company inter vires, and corporation could not be bound by such contract, in absence of estoppel.

5. Corporations ⬠425(6)—Corporation held not estopped to deny contract entered into exclusively with manager of gin owned by corporation.

Where owner of cotton seed had dealt with manager of gin in selling seed to gin, and did not take contract up with any officer of corporation or notify any of directors, held, gin company was not estopped from denying validity of contract.

6. Corporations ⬠305—Authority of board of directors cannot be delegated to another.

Where power to manage affairs of corporation was placed by statute and by charter in board of directors, under Rev. St. 1925, art. 1327, such authority cannot be delegated to another.

7. Corporations ⬠370(2)—Those dealing with corporation charged with knowledge of limits of its power under charter.

Those who deal with corporation are charged with knowledge of limits of its power prescribed by its charter, nor can those who deal with its agent assume that he had authority to make contract not authorized by its charter.

8. Corporations ⬠370(2)—Seller of cotton seed to manager of gin held charged with notice of manager's lack of authority to make such contract.

Where owner of cotton seed entered into contract with manager of gin for sale of cotton seed, he was charged with notice of agent's lack of authority under charter of corporation to make such contract.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Action by Ed Kasch against the Farmers' Gin Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Jno. D. Abney, of Hillsboro, for appellant. R. E. McKie, of San Marcos, for appellee.

BAUGH, J.  Appellee sued appellant corporation for damages for refusal to receive at Blum, Tex., and pay for, a carload of 1,000 bushels of pedigreed cotton seed contracted for by appellant's manager on August 16, 1920.  The contract price was $3.-

(277 S.W.)

40 per bushel. The seed were shipped about January 1, 1921. After rejection appellee resold them at $1 per bushel and sued for the difference. Appellant defended on the ground that the contract was procured by fraud, was ultra vires, and that Carmichall, its manager, had no authority to make it. By supplemental petition appellee pleaded estoppel of appellant to repudiate the contract, and that such purchase was within the implied powers of the corporation as reasonably necessary and incident to the conduct of its business.

The case was submitted to a jury on the following special issues:

(1) "Did the plaintiff, or his agent, B. A. Stufflebeme, prior to or at the time of the making of the contract sued upon, have any knowledge of any limitation upon the power of J. D. Carmichall as manager of the Farmers' Gin Company to contract for the purchase of the seed mentioned in said contract?" To which the jury answered: "No."

(2) "Was the purchase of planting seed for distribution to customers customary among ginners, as reasonably incident to and for the purpose of furthering and promoting the gin business?" To which the jury answered: "Yes."

The court thereupon rendered judgment for appellee, from which this appeal is prosecuted.

## Opinion.

Appellant has a capital stock of $10,000, and was incorporated "for the purpose of constructing or purchasing, operating, and maintaining cotton gins." Article V of its charter also provided that the "business of this association shall be transacted by five directors" to be elected annually by the stockholders.

[1] It is not contended that there was any express power in appellant's charter authorizing such a contract. Appellee contends, however, that the corporation had the implied power to make such a contract as a necessary incident to its main business. A corporation derives all its powers from the sovereignty creating it, and has none except those expressly or impliedly conferred by its charter. In defining its powers, Judge Gaines, in Northside Ry. Co. v. Worthington, 88 Tex. 568, 30 S. W. 1055, 53 Am. St. Rep. 778, quotes with approval the following pronouncement on the powers of a corporation under its charter:

" 'Whatever be a company's legitimate business, the company may foster it by all the usual means; but it may not go beyond this. It may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have however determined that such means shall .be direct, not indirect; i. e., that a company shall not enter into engagements, as the rendering of assistance to other undertakings from which it anticipates a benefit to itself, not immediately, but immediately by reaction, as it were, from the success of the operations thus encouraged—all such proceedings inevitably tending to breaches of duty on .part of the directors, to abandonment of its peculiar objects on part of the corporation.' Green's Brice's Ultra Vires, 88."

He then added:

"In short, if the means be such as are usually resorted to and a direct method of accomplishing the purpose of the incorporation, they are within its powers; if they be unusual and tend in an indirect manner only to promote its interests, they are held to be ultra vires."

Judge Phillips, in Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547, has laid down the following:

"Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation. A corporation formed for the prosecution of a business may foster that business by necessary or appropriate means—those means which are direct, in their nature related to the objects of the corporation, and by whose employment those objects will·be directly furthered. Under the pretense of fostering its own business, or even for that avowed purpose, it cannot, however, entangle itself in engagements or enterprises not necessary or reasonably appropriate to the advancement of its interests, from which it will receive only an indirect or remote benefit, if any, and with which therefore, as tested by its charter powers and their objects, it can have no true concern."

The test to be applied to the case at bar is, therefore, whether or not the contract sued upon was in a direct and immediate furtherance of the corporation's business, or reasonably necessary and appropriate in the conduct of such business. If so, the corporation had power to make it. If, on the other hand, the benefits to accrue to the corporation were indirect, merely incidental, and to come by reaction, rather than as an immediate result, such a transaction, under the authorities, was ultra vires.

The contract here sued upon was made before the opening of the 1920 ginning season. It called for future delivery, which was subsequently fixed for January 1, 1921, after the time the ginning season in that section usually closed, and when the gin itself was usually closed down. These seed were then to be resold and delivered to farmers in small quantities for spring planting in 1921. The benefits, if any, to the gin would not accrue until the ginning season of 1921, more than a year after the contract was made. These benefits were then contingent upon several conditions. Appellant had no assurance that the farmers would purchase any substantial part of these seed, or that circumstances, such as boll weevil, cotton worms, or reduced

prices, would not curtail the cotton acreage and lessen the demand for seed in 1921, which the proof shows did in fact that year occur—a matter uncertain in August 1920, but reasonably foreseen in January 1921, when the seed were to be delivered. Nor were the farmers who should purchase such seed in any wise to be obligated to gin their cotton raised therefrom at appellant's gin. Nor does the probability of an increased yield and improved grade of the cotton which appellant might cause to be grown in the community which it could reasonably expect to gin, make such an undertaking a reasonable incident to the gin business. An increased and improved yield might be obtained by the sale of fertilizer, the encouragement of irrigation, or sale and distribution of improved farm machinery, which would enable farmers to cultivate more acreage at less expense and in a better manner. But it cannot be contended that such undertakings would be within the charter powers of the corporation. It might with equal force be contended that such a contract for seed would bind a corporation chartered to buy and sell hardware and agricultural implements, for the reason that in such sale of cotton seed the merchant could reasonably expect to sell the farmer his planters and plows, and thus benefit his hardware business. This same argument was used in the case of Planters' Cotton Oil Co. v. Guaranty State Bank (Tex. Civ. App.) 188 S. W. 38, where the manager of the gin had been buying cotton which he had ginned—a practice which, by affording a market to the farmer had even a more direct and immediate tendency to draw customers and increase the volume of its ginning business than would the purchase and distribution of fine seed. Such purchases, however, were in that case held to be ultra vires.

The contract involved here is clearly distinguishable in character from the practice of the gin in accepting cotton seed as toll for ginning, and paying the difference in cash for the remainder of the seed ginned from the bale, or in purchasing remnants of lint cotton by way of collecting for ginning. Accumulation of seed in this manner is a direct, immediate, and necessary consequence of the ginning business. Frequently pay for ginning could not otherwise be collected. Hence the sale of such seed to an oil mill by contract upon a fixed market value basis, either before, as, or after same are accumulated by the gin, is a reasonable and necessary incident to its operation. Such was the case in Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850, relied on by appellee. Such a practice involved no large expenditures of funds, the seed thus obtained could be readily and promptly resold on a fixed market without any necessity for delay or risk of loss, was not speculative, and brought a direct and immediate benefit to the gin company.

[2, 3] And in passing upon such issue, the amount of the purchase, as compared to the total capital stock of the corporation, and the speculative character of the transaction as well, must be taken into consideration. As stated by Judge Hodges in Planters' Cotton Oil Co. v. Bank, supra:

"The stockholders of private corporations have a right to object to the investment of their corporate funds in speculative and hazardous enterprises."

Not only must the enterprise be one reasonably necessary to the conduct and furtherance of the corporation's main purpose, but, for it to be so, it must require only a reasonable expenditure of the corporation's capital. An undertaking, admittedly only incidental to the corporation's main purpose, that of ginning cotton, which required an investment, of more than half the capital stock of the corporation, could scarcely be deemed reasonably necessary in conducting its business. In the instant case the contract called for payment in the future, in a speculative enterprise, of more than one-third the entire capital stock of the corporation, from which the appellant could derive no benefit for at least a year, and then only an indirect or remote benefit, if any at all. Under all these circumstances, and under article 1164, R. S. 1911 (article 1349, R. S. 1925), the rule laid down by the Supreme Court, and the undisputed evidence, we have concluded that the contract sued upon was ultra vires.

[4] Nor would custom of gins over the state generally to purchase fine seed for their patrons make this contract inter vires. The evidence failed to show that such a custom prevailed in Hill county or in the Blum section. There was evidence that such custom did prevail throughout the state generally, but even if the manager of the appellant had customarily made such purchases for appellant, if ultra vires in their nature, such custom would not bind the corporation in the absence of estoppel. This point was expressly decided in the Planters' Cotton Oil Company and Bowman Lumber Company Cases, supra. Under the rule laid down by Chief Justices Gaines and Phillips, it is not enough that such practices or means be usual or customary, but, in addition, the benefits to the corporation must be direct and immediate, and the undertaking reasonable. In the case at bar the contract involved an excessive and unreasonable expenditure of corporate funds, was speculative in its nature, and, as the proof showed, a hazardous enterprise.

[5] Nor do we think appellant is estopped, as urged by appellee, to deny the invalidity of the contract. Appellee's agent dealt exclusively with Carmichall as manager of the gin in procuring the order. He at no time took the contract up with any officer of the corporation, nor did appellee ever notify any of its board of directors of such contract.

On the other hand, every member of the board of directors testified that he knew nothing whatever about the contract until January, 1921, when bill of lading with draft attached was sent to the Blum Bank.

[6-8] It is not urged that Carmichall had express authority from the board of directors to make such a contract. The contrary appears. The power to manage the affairs of the corporation was placed by statute and by the charter in the board of directors (article 1159, R. S. 1911 [article 1327, R. S. 1925]), and such authority cannot be delegated to another (Tempel v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222). And those who deal with a corporation are charged with knowledge of the limitations upon its powers prescribed by its charter. Nor can those who deal with its agent assume that he had authority to make a contract not authorized by its charter. See Franco-Texas Land Co. v. McCormick, 85 Tex. 416, 23 S. W. 123, 34 Am. St. Rep. 815; Planters' Cotton Oil Co. v. Bank, supra. Appellee was therefore charged with notice of Carmichall's lack of authority to make the contract in question.

We have read carefully the cases cited by appellee, and do not dissent from the holdings in those cases. We will not undertake here to distinguish those cases from the case at bar. In each of those cases there was a direct and immediate benefit flowing to the corporation from the contracts involved. They do not attempt to vary the general rules announced by our Supreme Court nor the limitations prescribed by our statutes. The question here is one of application to the facts of the particular case. Having reached the conclusion that the contract was ultra vires, and that under the undisputed evidence no estoppel by the corporation to repudiate the contract is shown, discussion of the other issues raised becomes unnecessary. It becomes necessary, therefore, to reverse the judgment of the trial court and here render judgment for the appellant.

Reversed and rendered.

## On Motion for Rehearing.

Appellee has presented nothing new in his motion for rehearing, but, inasmuch as he insists that our opinion conflicts with holdings in certain cases cited by him, we have concluded to discuss those cases and distinguish them from the case at bar. There is little controversy over the general rules laid down by our Supreme Court as to what makes a contract ultra vires. The question here, as stated in our opinion, is one of application of those rules to the undisputed facts of the case at bar.

The first case of alleged conflict cited is the Sealy Oil Mill Case (Tex. Com. App.) in 235 S. W. 850. In that case the seed involved were those accumulated by the gin during the ginning season by taking seed as toll for ginning and paying the patron for the remainder of the seed in the bale. The court found in that case not only that such a practice was customary among gins generally, and had been practiced by the manager of this particular gin with knowledge of its stockholders and directors for a number of years, but that acquisition of seed in this manner "was an *essential* thing to do to secure business." (Italics ours.) In that case accumulation of such seed from time to time in small quantities, largely as pay in kind for the very work the gin company was chartered to do, and which could be readily disposed of immediately to oil mills at a fixed market price, met all the elements of the rule of the Supreme Court to bring it within the implied powers of the corporation; that is, that the return to the corporation was direct, immediate, reasonable, and necessary.

The second case of alleged conflict is that of Itasca Mill & Elevator Co. v. Wooten (Tex. Civ. App.) 246 S. W. 678, involving the sale by the manager of the corporation of seed wheat for spring planting. The manager sold the farmer fall wheat for spring wheat, and his crop failed. He sued the elevator company for damages. The corporation in that case was chartered under section 28, art. 1121, R. S. 1911, and the charter itself stated that its purpose was "milling corn and wheat; buying and selling all kinds of farm products, and elevator and storage business." The plaintiff recovered in the trial court, and the Court of Civil Appeals affirmed its judgment, holding, first, that the language of the charter creating the corporation, along with other objects, for "selling all kinds of farm products" authorized the sale of seed wheat as an express power of the corporation; and, second, that by accepting and retaining the purchase price of the wheat, without offer to refund it, the corporation ratified the act of its agent. In that case it is clear that the corporation was expressly authorized in its charter to do a merchandizing business in the very commodity sold.

In Hollis Cotton Oil, Light & Ice Co. v. Marris (Tex. Civ. App.) 207 S. W. 368, the Fort Worth Court of Civil Appeals, following the rule announced by the Supreme Court that, "if the means be such as are usually resorted to, *and a direct method of* accomplishing the purpose of the incorporation" (italics ours), they are within the powers of the corporation, held that the corporation had authority to purchase cattle to feed meal and hulls to in order to dispose of its products. Not only was this practice common to that particular corporation, but its charter, granted under the Oklahoma statute, allowed the corporation, not only to engage in distinct and different kinds of enterprises as its charter name indicates, but "to manufacture produce, prepare, buy, sell, import, export, and generally deal in cotton seed and any and all products and by-products thereof, * * * and to do such other things as will further

the interests of the cotton oil, ginnery, ice, electric light, and elevator business."

It would be difficult to make more inclusive its express powers, or to give the corporation a wider latitude in their exercise. In that case the undertaking was wholly subordinate to the main purposes of the corporation and a direct method used to dispose of its by-products. After discussing numerous cases on the question of ultra vires, the court expresses some doubt in its holding thereon in concluding:

"But, even if we are mistaken in the views heretofore expressed, we are of the opinion that this judgment should be sustained on the ground that the plaintiff corporation was estopped from asserting its lack of corporate power to make the contract alleged by the defendants."

In Comanche Cotton Oil Co. v. Browne, 99 Tex. 660, 92 S. W. 450. Mrs. Browne resisted payment on a subscription contract for stock in "a cotton oil mill," on the ground that there was a fundamental variance between the charter powers of the corporation after it was organized and the subscription contract which she signed. The contract called only for a "cotton oil mill." The charter authorized the corporation, in addition, to "erect, own, and operate whatever cotton gins may be necessary and proper as feeders for said oil mill." The trial court rendered judgment for Mrs. Browne. The Supreme Court reversed this judgment, holding that "if one or more cotton gins should be found *reasonably necessary* to the operation of the cotton seed oil mill, the corporation would be authorized to operate such *necessary* cotton gins." (Italics ours.) And further stated that:

"The charter as it was framed does not empower the corporation to operate cotton gins as a business independent of their necessity as a support for the oil mill business."

No contract of the corporation under its charter was involved, and it is manifest that in passing upon the corporate powers the criterion of the Supreme Court was that of reasonable necessity. And in the North Side Ry. Co. and Bowman Lumber Co. Cases, Chief Justices Gaines and Phillips have added that the undertaking must be a direct or immediate means of furthering the corporate purpose, not indirect, remote, speculative, or by reaction.

It is clear to us, therefore, that these cases are readily distinguishable from the case at bar. In the instant case the corporation was organized to acquire or build and operate a gin. Its purpose was to gin cotton. Its manager, without the knowledge or consent of its board of directors, made the contract before the ginning season opened. The seed were delivered after the ginning season closed. Hence the contract could have been no inducement to farmers to bring cotton to the gin for that season in order to get planting seed. After the ginning season was over and the gin closed down there was no more reason, if as much, why a farmer should go there for planting seed than to an oil mill, feed store, seed and grain dealer, or other agency of that character. Even banks sometimes obtain improved planting seeds for farmers. Then, too, if Carmichall had authority to contract for one carload of seed, he could with equal reason have contracted for two or even three carloads, should the cotton acreage in that vicinity have justified it. Yet three cars at the price fixed would have obligated the entire capital stock of the corporation in an enterprise only incidental at most to its main purpose, speculative and hazardous in character, with only an indirect return, if any at all, to the corporation, and that more than a year after the contract was made.

Nor have we disregarded the jury's findings as charged by appellee in his motion. We have accepted their finding as sustained by the evidence. It is to be noted, however, that the question submitted to the jury makes no limitation in such purchases, as to time of purchase, place, quantity, time of delivery, necessity for such purchase—in short, of those elements essential to bring the purchase within the implied powers of the corporation under the rules laid down by the Supreme Court. We have merely concluded that under the undisputed facts of this case, including the jury's findings, the contract was ultra vires.

Nor do we wish to be understood as holding that under no circumstances would a gin corporation be authorized to furnish planting seed in any quantity to its patrons. If in doing so there was a direct return to the gin such undertaking was reasonable in extent, and became reasonably necessary in the conduct of its business, a different question would be presented. What we do hold here is that the purchase by Carmichall, without the knowledge of his board of directors, of $3,400 worth of seed, under the facts and circumstances of this particular case, was ultra vires under rules long since established by our Supreme Court.

Appellee requests us to file conclusions of law and fact, but we think we have made sufficient statement of facts and conclusions of law in our opinion and on this motion to render further findings and conclusions unnecessary. Appellee's motion is overruled.

Motion overruled.