## KASCH v. FARMERS' GIN CO.*
**(No. 884—4536.)**

Commission of Appeals of Texas, Section B. Feb. 29, 1928.

**1. Corporations 🔑370(3)—Implied powers of corporation embrace those reasonably necessary according to usual methods of particular business to successful prosecution of business.**

Implied powers of corporation embrace those that are reasonably necessary according to the usual methods of that particular business to successful prosecution of specific business authorized, and are not limited to those things indispensably necessary to the business, providing benefits to be derived from contract are direct, and not so indirect as to be remote.

**2. Corporations 🔑410—Contract by agent of cotton gin corporation to purchase planting seed for disposition to customers held not ultra vires.**

Where, under charter, corporation had full power to operate and maintain cotton gin in manner such business enterprises were conducted, and agent who had authority to hire and discharge men to operate plant entered into contract to purchase planting seed for disposition to customers which was customary among gin men, and directly contributed to successful operation of gin business, *held*, that such contract was not ultra vires.

**3. Trial 🔑136(1)—Customary method of operating business is essentially question of fact.**

Question as to what is usual and customary method of operating business is essentially question of fact, for such customs and usages change with time.

**4. Appeal and error 🔑1082(2)—Assignments of error not considered in Court of Civil Appeals because of reversal and rendition on other grounds must be considered by Commission of Appeals, where reversal of Court of Civil Appeals judgment was recommended.**

Where Court of Civil Appeals did not find it necessary to consider rejection of certain testimony assigned as error in reversing rendering judgment, and case was brought to Commission of Appeals on writ of error, *held* that, since that court was recommending reversal of judgment of Court of Civil Appeals, it was necessary for it to pass on the assignment.

**5. Corporations 🔑519(2)—Testimony of agent that contract alleged to have been entered into by corporation through him was induced by assuring him that instrument represented true agreement held admissible.**

Where action was brought against corporation on contract alleged to have been entered into by agent of corporation, and testimony of agent was offered to show that real agreement was that corporation should act as agent and not as purchaser, and that corporation's agent was induced to sign instrument without reading it, *held*, that such testimony was admissible to show that contract was never executed.

**6. Contracts 🔑93(2)—One cannot negligently fail to read instrument which he signs, and then avoid effect by plea that he was ignorant of its contents.**

One cannot negligently fail to read an instrument which he signs, and then avoid its binding effect by plea that he was ignorant of its contents, but he must show something of blame on opposite party whereby he was prevented from reading, or at least excused for failing to do so.

**7. Contracts 🔑94(5)—One who has by false statement induced another to act may not say that he was negligent, in that he had means of knowledge.**

One who by his false statement induces another to act may not say to him that he was negligent in thus acting, in that he had means of learning truth, and should have done so.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by Ed Kasch against the Farmers' Gin Company. From judgment of the Court of Civil Appeals (277 S. W. 746) reversing judgment for plaintiff and rendering judgment for defendant, plaintiff brings error. Reversed in part, and affirmed in part.

🔑For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied April 11, 1928.

R. E. McKie, of San Marcos, for plaintiff in error..

John D. Abney, of Hillsboro, for defendant in error.

SPEER, J. The Farmers' Gin Company is a corporation whose charter purpose is "constructing or purchasing, operating and maintaining, cotton gins." During the period intervening July and December, 1920, Carmichall was its employee, with authority to hire and discharge men whose services were required to operate the gin plant during that season and to purchase such materials as might be necessary for the operation. He was given no authority to act for the corporation in respect to a contract or the subject-matter there of such as that in controversy—any such authority was definitely precluded when he was employed. Nevertheless, in August, 1920, he signed a contract in the corporation's name with Kasch, whereunder Kasch agreed to sell to the corporation 1,000 bushels of certain "pedigreed cotton seed" at $3.40 per bushel, to be delivered about January 1, 1921, and to be resold (for planting purposes) to farmers in the vicinity of the gin plant. No officer or director or agent of the corporation (except Carmichall) knew that any such contract had been made prior to the 6th or 7th day of January, 1921. The cotton seed were shipped from San Marcos early in January, 1921. Kasch drew a draft (with bill of lading attached) upon the corporation, and forwarded it to a bank at Blum for collection. The draft was presented to the corporation (through its president and other officers), and payment was declined with the statement that the corporation had not bought or agreed to buy the cotton seed. Through presentation of the draft and investigation which followed, the officers of the corporation, for the first time, learned of the contract and Carmichall's acts.

Ed Kasch and Herman Conrad (alleging that they did business as partners in the name of "Ed Kasch") sued upon the contract and its breach. The corporation, amongst other defenses, set up ultra vires. Peremptory instruction was requested by the corporation and refused by the court. The case was submitted on special issues, and, upon a verdict finding that plaintiff knew of no limitation upon Carmichall's authority, that "the purchase of planting seed for distribution to customers, was customary among gin men, was reasonably incident to and for the purpose of furthering and promoting the gin business," etc., judgment was rendered against the corporation. Upon appeal, the Court of Civil Appeals held the contract to be ultra vires, and therefore unenforceable, and reversed the judgment, rendering judgment for the corporation. 277 S. W. 746. Writ of error was allowed upon assignments pre-senting an intra vires nature for the contract.

The contract upon which the suit was predicated was clearly not within the express powers of the defendant in error corporation. Whether or not it falls within the implied powers must be determined from the principles announced in our decisions, from some of which we quote:

"Whatever be a company's legitimate business, the company may foster it by all the usual means; but it may not go beyond this. It may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. * * * In short, if the means be such as are usually resorted to and a direct method of accomplishing the purpose of the incorporation, they are within its powers; if they be unusual and tend in an indirect manner only to promote its interests, they are held to be ultra vires. * * * A corporation, created * * * under a statute which merely states the nature of the business and does not further define its powers, may exercise such powers as are reasonably necessary to accomplish the purpose of its creation; and it may be such as are usually incidental in practice to the prosecution of the business, and no more." Northside R. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778.

"Corporations have an implied power to make such contracts as are usual and necessary for carrying into effect the purposes for which they were created. * * * 'The power of a corporation, in respect to contracts and business dealings, extends not merely to those which are absolutely essential or indispensable to the performance of the specified acts authorized by its charter, but as well to those which, not being prohibited by statute or public policy, are designed and may be useful to promote the main enterprise. The choice of means which are reasonably promotive of the main purpose is with the corporation; and where different methods stand this test, judicial tribunals will not revise its discretion by holding that the one chosen was not indispensable, and that another might have been more wisely taken.'" Indianola v. Gulf, W. T. & P. R. Co., 56 Tex. 602.

"It is our opinion that a corporation in the transaction of its business, the business for which it was organized, has the same latitude as the individual in the same character of business in those things that are essential to the successful operation of that particular business." Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850.

"Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation." Bowman Lumber Co. v. Pierson, 110 Tex. 545, 221 S. W. 930, 931 (11 A. L. R. 547).

"Undoubtedly the main business of a corporation is to be confined to that class of operations which properly appertain to the general purposes for which its charter was granted. But it may also enter into contracts and engage

in transactions which are incidental or auxiliary to its main business, or which may become necessary, expedient, or profitable in the care and management of the property which it is authorized to hold under the act by which it was created." Texas Fidelity & Bonding Co. v. General Bonding & Casualty Ins. Co. (Tex. Com. App.) 216 S. W. 145.

[1] To crystalize the rule, it may be said the implied powers of a corporation embrace those that are reasonably necessary, according to the usual methods of that particular business, to the successful prosecution of the specific business authorized, and is not limited to those things indispensably necessary to the business, provided always the benefits to be derived from the contract are direct, and not so indirect as to be remote.

[2] Under the charter of defendant in error, it had the full power to operate and maintain its cotton gin in the usual manner such business enterprises were conducted, and, the purchase of planting seed for disposition to customers having been found by the jury to be customary among gin men, and it being evident that such custom is not only reasonably helpful and necessary, but that it directly contributes to the successful operation of the gin business, the question of the contract's being ultra vires must be settled in favor of the power.

[3] What is the usual and customary method of operating a business is essentially a question of fact, for such custom and usage change with time. The writer is not an old man, and yet he recalls vividly as though it were yesterday, that in an earlier day in Texas the gin business was not what it is to-day. In those days, the ordinary gin plant consisted of an unpretentious equipment frequently of a capacity of two bales per day (twelve hour time). The method of pressing the cotton was primitive, consisting of a huge wooden screw cut from an oak or gum tree, which passed through a threaded stationary block operated by a lever beam, to which was hitched the old farm horse for motive power. In that day the purchase of such an equipment would have been clearly within the implied powers of a gin corporation, but a purchase to-day of such a press or screw would be clearly ultra vires, for it would not only be out of the usual customary method, but entirely unsuited to the business. Such an article could only find its appropriate place with an exhibit of ox yokes, linchpin wagons, and spinning wheels. Counsel for plaintiff in error at the bar referred to this change of methods, and denominated it a "metamorphosis." Counsel for defendant in error excepted to his law, and challenged his diction. While counsel's language is highly ornate, it nevertheless truly signifies the great change that has come about in the usual method of operating and maintaining a cotton gin. The law has not changed, but conditions have changed, and the very principle that would have forbidden a contract 50 years ago will authorize it to-day, or vice versa. We think, in the light of the verdict, the contract was not ultra vires.

[4] Amongst the assignments presented to the Court of Civil Appeals by the gin company was one complaining of the rejection of certain testimony. The Court of Civil Appeals, having rendered the case upon the question of the ultra vires nature of the contract, did not find it necessary to pass upon this assignment. Since we are recommending a reversal of that judgment, it becomes necessary for us to pass upon the further assignments which might require a reversal of the case. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

[5] By proper bill of exceptions it appears the defendant offered in evidence the direct interrogatory No. 4b propounded by defendant to J. D. Carmichall, as follows:

"You will please state all you know in reference to the transaction alleged to have taken place between you and the said B. A. Stufflebeme as plaintiff's agent, on or about the 16th day of August, 1920, in reference to the 1,000 bushels Kasch pedigreed cotton seed above referred to."

And the answer thereto, to the effect that the real deal between himself and Stufflebeme as definitely agreed upon was that the gin company should act as the agent of Kasch and Conrad for the sale of cotton seed to the gin's customers upon a commission basis, and that Stufflebeme wrote up the instrument and presented it to him, at the time assuring him that it correctly represented their agreement, whereby he was induced to sign the instrument without reading it, and that he would not have executed it but for the representations that the instrument correctly set forth the agency agreement.

[6, 7] The testimony was excluded upon the objection that the same was an attempt to vary the terms of the written contract by parol evidence. We think the assignment in the Court of Civil Appeals complaining of this ruling should be sustained. The issue of fraud in the respect indicated by the tendered testimony was pleaded. The testimony was more than a contradiction of the terms of the written contract. It went to the integrity of the contract, and, if found to be true, would destroy it entirely. Under such defense it is not a question of terms of the agreement; it is a question of contract or no contract. Of course, as replied by plaintiff in error, one cannot negligently fail to read an instrument which he signs, and then avoid its binding effect by the plea that he was ignorant of its contents. He must show something of blame upon the opposite

party whereby he was prevented from reading, or at least excused for his failure to do so. It does not, however, lie in the mouth of one, who by his false statement induces another to act, to say to him that he was negligent in thus acting, in that he had the means of learning the truth, and should have done so. Conn v. Hagan, 93 Tex. 334, 55 S. W. 323; Taber v. Eyler (Tex. Civ. App.) 162 S. W. 490; Western Mfg. Co. v. Freeman (Tex. Civ. App.) 126 S. W. 924; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900.

We recommend that the judgment of the Court of Civil Appeals, in so far as it rendered judgment for this defendant in error, be reversed, and that its judgment reversing and remanding the cause to the district court for another trial be affirmed, for the reason we have stated last above.

CURETON, C. J. Judgment of the Court of Civil Appeals, in so far as it rendered judgment for the defendant in error, is reversed, but judgment of the Court of Civil Appeals, in so far as it reversed judgment of the district court and remanded cause, is affirmed.