## TEMPLE LUMBER CO. v. MILLER.
### No. 14452.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 12, 1943.

Rehearing Denied March 19, 1943.

James R. Wiley, of Denton, and C. M. McWilliams and R. O. Kenley, both of Houston, for appellant.

Davis & Davis, of Denton, for appellee

SPEER, Justice.

Plaintiff A. A. Miller sued defendant Temple Lumber Company, a corporation, for damages growing out of an alleged contract by which defendant contracted to construct a dwelling house for plaintiff in the City of Denton, Texas.

The pleadings, consisting of an amendment and three supplemental petitions by plaintiff, and an amended answer and two supplemental answers by defendant, along with a cross-action, need not be given in detail, but their substance may be seen from what we shall say concerning the points decided by the court in the absence of a jury trial, and the errors assigned.

Court found that each party was indebted to the other; that plaintiff's debt was greater than that of defendant, offsetting one against the other, and rendered judgment for plaintiff for the excess of his claim over that of defendant. The defendant has appealed.

At the request of defendant, the court filed findings of fact and conclusions of law. The facts found are, in substance: That plaintiff and defendant entered into a contract, part in writing and part oral, by which defendant would furnish all material and labor in the construction of a house for plaintiff according to a set of plans and specifications furnished by plaintiff for the sum of $3072. That changes agreed upon could be made and results could reduce or increase the contract price; if reduced, plaintiff was to have the benefit, and if increased, he should pay. Defendant was a corporation long before and at the time of the transaction, and W. B. Peters was the manager of the Denton place of business. The corporation's charter set out the purposes of the corporation as that of "manufacturing lumber and the purchase and sale of material used in such business and doing all things necessary and incident to such lumber business." That J. E. Graham was, at the time in controversy, an employee of defendant at its place of business; plaintiff and Graham were friends of long standing; all negotiations were between plaintiff and Graham; from the beginning, Graham represented to plaintiff that defendant was back of the contract and it was to be between plaintiff and defendant; Graham was, at all times, in charge of the construction, and that he was defendant's general agent while in charge of the job; Graham signed the plans and specifications as follows: "O.K. Guaranteed as to performance, Temple Lumber Company, by J. E. Graham, Agent." His acts in this connection were those of defendant. That after the contract sued on was consummated, defendant, acting through Graham, procured one Tunnicliff to actually do and superintend the construction of the house; that plaintiff never had any dealings with Tunnicliff, never knew him until he began the work; plaintiff inquired of Graham why Tunnicliff's name appeared on the contract, and was told it was only a formality to enable defendant to finance the deal, but that plaintiff's contract was between him and defendant. That Tunnicliff was the agent of defendant; when it was reported to plaintiff the house was completed, he made a check payable to Tunnicliff for $1072 and gave it to Graham, who endorsed it and passed it to the credit of defendant; plaintiff borrowed $2000 and paid it to Graham and defendant received the proceeds.

The fact findings include many items of defective workmanship and materials and that it would require $800 to correct them; that on account of changes made in the plans, plaintiff still owed to defendant $180.56. That defendant was a principal in said contract and that in all matters involved Graham was acting within the scope and apparent scope of his authority.

Court concluded as a matter of law that defendant was a principal in the contract and if not an active principal, then an absolute guarantor of its performance; that the contract made by defendant was not ultra vires; that Graham had authority to bind defendant in making the contract; that defendant had received the consideration for the contract and was estopped to plead ultra vires. That since defendant owed plaintiff more than plaintiff owed it, an offset of the lesser amount should be made from the greater, and plaintiff should recover the difference. We have not attempted to give the entire findings nor conclusions, but only those complained of.

Defendant has presented 20 points of alleged error, but the first three are admittedly abandoned; they pertain to the sufficiency of the evidence to establish plaintiff's claim of $800; no further notice will be taken of those points.

The remaining points relied upon are briefed in groups, indicating that they each in some form present alleged errors relating to the same matter. Nos. 4, 11, 12, 13, 14, 15 and 20 are in the first group and assert that there is no competent evidence to support the court's fact findings that plaintiff ever made a contract with defendant, while purportedly acting through J. E. Graham; that the conclusions of law to that effect and that the said acts were not ultra

vires were improper in law, and were without support in the evidence.

Under these points, defendant's brief is devoted to the specific point of ultra vires. It is insistently urged that since defendant's charter only authorized it to buy and sell lumber and building material, it could not be held to have made a contract to construct a building, as contended by plaintiff.

We will forego the historical background of the policy of our law for which our statutes have been enacted for the creation of corporations with specific powers and authority and their business relation to the public as a body politic. It appears that the early English cases, as well as some by federal courts, and even the early cases decided by our state courts, are not in complete harmony with respect to the extent a corporation may go and bind itself. But the trend seems to be that even though the charter provisions do not, in so many words, authorize an act, the corporation may bind itself to do many things, when not against public policy and are not forbidden by law. There is a clear distinction between acts which are void because of legal inhibitions, and those which are not prohibited but are those which are not enumerated in the purpose clause of the charter. In the latter class are to be found instances which include acts which are appropriate, convenient and suitable in carrying out the purposes for which the charter was expressly granted. These are termed implied powers and authority. Malone v. Republic Nat'l. Bank & Trust Co., Tex.Civ.App., 70 S.W.2d 809, writ dismissed; State v. San Antonio Public Service Co., Tex.Com.App., 69 S.W.2d 38; Comanche Cotton Oil Co. v. Browne, 99 Tex. 660, 92 S.W. 450; Kasch v. Farmers' Gin Co., Tex.Com.App., 3 S.W.2d 72; Long Bell Lumber Co. v. Hampton, Tex.Civ.App., 20 S.W.2d 1081; Williford Lumber Co. v. Malakoff Brick Co., Tex.Civ. App., 113 S.W.2d 248, writ dismissed; 10 Tex.Jur. 891, sects. 252 and 254.

To our minds, the contract involved here was one not prohibited by law nor by any principle of public policy. No good reason exists why defendant could not contract with plaintiff to sell him the materials to go into his house. We think it would logically follow that as an inducement to plaintiff to buy the materials from it, defendant could agree and bind itself to deliver the materials at its own expense, although its charter did not expressly authorize it to haul building materials. If it could deliver, then could it not even cut the lumber into desired lengths? Carrying the thought further, it could with propriety obligate itself to do many things not expressly mentioned in its charter, when "appropriate", "convenient" and "suitable" in the prosecution of the line of business expressly mentioned in the charter. An act of a corporation is said to be ultra vires when beyond the scope either of the express or implied powers of its charter. If the acts are within the scope of the implied powers of the corporation, they cannot be said to be ultra vires, yet some of our courts deem them such if they are not within the express terms of the charter. We think that if the act is not one prohibited by law or public policy, and it inures to the direct benefit of the corporation, and is executed, it is not, strictly speaking, ultra vires, and this is apparently the view taken by the trial court.

We need not speculate upon whether plaintiff believed Mr. Graham, whom he says he thought was manager of the business, had the authority to enter into the kind of contract before us, for the testimony shows that, irrespective of who was its manager at Denton, it had for some time carried advertising matter in the local newspaper to the effect that the Company would look after all details and construct homes for those desiring to build. One especially of such advertisements reads: "Where The Home Begins, Build your home with the complete assistance of Temple Lumber Single Unit Building System. * * * All the details of building are taken care of in one simple complete transaction. The Planning, Financing and Construction is carefully supervised from one office. * * *."

The court found as a fact (and there is an abundance of evidence to support it) that the house was in fact erected by defendant, and that plaintiff had paid to defendant the entire original contract price,—the contract was fully executed on both sides; the controversy here being over defective workmanship and materials. It would appear that in such circumstances, defendant would be estopped to plead and rely upon ultra vires, and at the same time receive and retain the direct benefits of the contract it seeks to avoid. Such contention does not appeal to our sense of justice and equity. Estoppel was pleaded by

plaintiff; court found the facts as indicated, and concluded that defendant was estopped to rely upon its plea of ultra vires. In this we think he was correct. Rio Grande Cattle Co. v. Burns, 82 Tex. 50, 17 S.W. 1043; Burton-Lingo Co. v. Federal Glass & Paint Co., Tex.Civ.App., 54 S.W.2d 170; Long Bell Lumber Co. v. Hampton, Tex.Civ.App. 20 S.W.2d 1081; Aero Gas Refining Co. v. Fisk Tire Co., Tex.Civ.App., 137 S.W.2d 191, writ refused; Farmers' State Bank v. First State Bank of Abilene, Tex.Civ.App., 260 S.W. 664, writ refused.

Points 6 to 10, and 16, 17 and 19 challenge the fact findings and conclusions of law to the effect that when plaintiff paid the contract price to defendant and moved into the house he did not waive or estop himself to later inspect the structure and assert his rights thereunder.

■ The record discloses that for a month or more prior to the time the house was completed plaintiff was confined to a hospital and was convalescing at home when the work was finished; that he was unable to inspect the building; upon the insistence of Mr. Graham with whom he had dealt, he went to the bank where he expected to borrow the last payment to be made on the contract and renewed and extended the mechanic's lien contract obligation and paid Graham, and the amount was deposited to the credit of the defendant; that he had the definite understanding with Graham at that time that defendant stood back of the contract and would make any adjustments with plaintiff that proved to be right and proper and that plaintiff was accepting the job on that condition. If the trial court was correct (and we think he was) in concluding that Graham was the general agent of defendant and that his acts and representations were binding on the defendant, then no merit is presented by these points.

By point 18, it is contended that plaintiff precluded himself from proving he only accepted the building upon the condition that he could subsequently inspect it and report to Graham any defects in workmanship and materials found, by introducing in evidence an affidavit made by Graham and Tunnicliff to the effect that the house was completed according to plans and specifications and accepted by plaintiff. Defendant argues that having introduced the instrument in evidence, plaintiff is bound by it. We have read the authorities cited in support of the contention, and as we construe them they apply to different situations to that here involved.

Omitting formal parts, the instrument referred to reads: "That we, R. V. Tunnicliff and the Temple Lumber Company acting through James E. Graham, local manager, do hereby certify that the improvements described in a certain mechanic's lien dated on the 19th day of July, 1939, between A. A. Miller and wife Nettie L. Miller and R. V. Tunnicliff, have been completed in accordance with the plans and specifications and accepted by the owners and that all mechanic's, materialmen's, sub-contractor's and laborer's liens have been fully discharged and satisfied." Signed, "R. V. Tunnicliff, Temple Lumber Company, by James E. Graham."

■ It will be observed that from the inception of this trial defendant sought to avoid liability upon the theory that Graham was not the local manager of defendant company, and was without authority to bind it by such contracts as that involved here. When plaintiff offered the instrument in evidence, he stated, among other things, this: "I am introducing this instrument in evidence for one part of it particularly. It is an affidavit that the bills are paid and it says: 'That we, R. V. Tunnicliff and the Temple Lumber Company, acting through James E. Graham, local manager', and James E. Graham signed it." It must have been apparent to the trial court, sitting as a trier of facts, that counsel was offering the instrument in support of his contention that Graham was the local manager and was acting within the apparent scope of his authority to bind the defendant. The court could not very well hear or see a part of the instrument and not know its whole contents. Furthermore, we note that the contradiction of the instrument wherein it recited that the building had been accepted by plaintiff, was brought out by defendant while cross-examining the plaintiff. Defendant did not claim a surprise, nor otherwise object to the testimony, and we think it cannot now consistently complain because plaintiff profits by testimony thus developed by defendant. James E. Graham died before the date of the trial in this case.

We have concluded that no reversible errors are presented by any of the points raised, and we therefore order that the judgment of the trial court should be and is accordingly affirmed.