## PASSMORE et al. v. DALLAS DISTRIBUTING CO. (No. 7847.)

Court of Civil Appeals of Texas. San Antonio. Dec. 14, 1927.

**1. Corporations ⬦➡430—Contract of president and general manager to exchange corporation's commodities for groceries for personal use was not binding on corporation.**

Corporation president and general manager was not authorized to contract to exchange corporation's commodities for groceries for personal use, and such contract was not binding on the corporation, especially where defendant knew groceries were for president's personal use, and not for benefit of corporation.

**2. Corporations ⬦➡458—Contract whereby corporation, organized to purchase and sell goods, wares, and merchandise, was to exchange beer for groceries, held ultra vires; "sale of merchandise" (Vernon's Ann. Civ. St. 1925, art. 1349).**

Under Vernon's Ann. Civ. St. 1925, art. 1349, providing that no corporation shall use its assets, except to accomplish the legitimate business of its creation, a contract whereby a corporation, organized to purchase and sell goods, wares, and merchandise, was to exchange beer, which was its product, for groceries, *held* ultra vires, as not being a "sale of merchandise," and beyond power of the corporation to make.

Error from Dallas County Court at Law No. 2; Wm. M. Cramer, Judge.

Suit by the Dallas Distributing Company against Frank A. Passmore and another, partners doing business as Passmore & Moore, wherein defendants brought a cross-action. Judgment for plaintiff, and defendants bring error. Affirmed.

Church, Read & Bane and R. J. Dixon, all of Dallas, for plaintiffs in error.

Graham & Burke, of Dallas, for defendant in error.

COBBS, J. This suit was instituted April 27, 1925, by the Dallas Distributing Company, a corporation, as plaintiff, against Frank A. Passmore and Seabrona A. Moore, partners doing business as Passmore & Moore, as defendants. Plaintiff, in substance, alleged an indebtedness in the sum of $362.10, due for merchandise sold and delivered, as shown by itemized verified account attached to plaintiff's pleadings. The merchandise was sold by plaintiff's predecessor, Jackson & Co., a corporation, which, by charter amendment, had changed its name to Dallas Distributing Company.

The defendants, in their amended answer, entered a general denial, and further pleaded a contract entered into between themselves and C. B. Jackson & Co., acting by and through its duly authorized president, C. B.

Jackson, whereby plaintiff purchased groceries from defendants, who in payment therefor took Budweiser, plaintiff's product, as they needed it; that plaintiff bought $451.78 worth of groceries; that defendants in return received from plaintiff $362.10 worth of Budweiser; and that plaintiff was therefore indebted to defendants in the sum of $89.68, the difference in the two accounts. Wherefore in their cross-action defendants prayed for judgment against plaintiff for $89.68.

Plaintiff in a supplemental petition pleaded: (1) That defendants' cross-action was barred by limitations; and (2) that C. B. Jackson had exceeded his authority in executing the contract alleged by defendants. Hence same was not binding on plaintiff corporation, being an ultra vires act.

Though the amount of the judgment instructed by the court is not stated in either party's brief, the transcript shows the judgment for $362.10, with 6 per cent. interest per annum from January 1, 1925.

The corporation was organized as a private corporation for the purpose of buying and selling goods, wares, and merchandise. It entered into an agreement that defendants were to purchase Budweiser beer from the plaintiff, and that C. B. Jackson, president of the corporation, was to continue to purchase that commodity for his own personal use and benefit, and that defendants' account against C. B. Jackson for said groceries was to be an offset to plaintiff's account for Budweiser sold and delivered by it to said defendants. Such a contract as made in this case was clearly ultra vires, illegal, unlawful, and void, and, when enforced, would tend to dissipate and employ the funds and assets of plaintiff and said Jackson Company for a purpose for which the corporation was not created nor organized, and therefore contravening the plain and positive provision of our laws. Article 1349, Vernon's Annotated Civil Statutes of 1925.

[1] Besides this, there was no power in Mr. C. B. Jackson, as president and general manager, to make such a contract for his personal benefit, and he had no authority, expressed or otherwise, conferred upon him so to do. If he had such authority, that would have the effect of allowing an officer of a corporation to have and enjoy a private benefit or gain from a corporate transaction not contemplated. At the time plaintiffs in error entered into the contract in question, they had full notice and knowledge of the fact that the groceries sold by them to said C. B. Jackson were for the personal use and benefit of said C. B. Jackson, and that the same were not being purchased by said C. B. Jackson for or on the account of said plaintiff corporation or its predecessor, Jackson & Co. and the evidence showed that plaintiffs

---

⬦➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in error delivered said groceries to the private house and residence of said C. B. Jackson, and that no part of said groceries were ever delivered to the place of business of said corporation.

[2] The plaintiff corporation and its predecessor, Jackson & Co., Inc., was organized for the purpose of purchasing and selling goods, wares, and merchandise, and the execution by it of a contract to exchange its product for those of another mercantile establishment, which said product was entirely and wholly foreign to the business being transacted by said plaintiff corporation and its predecessor, Jackson & Co., Inc., did not, and does not, constitute the sale of merchandise within its corporate powers, and such a transaction is and was ultra vires, and beyond the power of the said corporation to make. Article 1349, Vernon's Annotated Texas Civil Statutes 1925; Railway Co. v. Gentry, 69 Tex. 625, 8 S. W. 98; Ingram v. University (Tex. Civ. App.) 196 S. W. 608; Lange Soap Co. v. Ward (Tex. Civ. App.) 269 S. W. 851; Staacke v. Routledge, 111 Tex. 489, 175 S. W. 994; Zurn v. Mitchell (Tex. Civ. App.) 196 S. W. 544; Farmers' Gin Co. v. Kasch (Tex. Civ. App.) 277 S. W. 746; Planters' Cotton Oil Co. v. Guaranty State Bank (Tex. Civ. App.) 188 S. W. 38.

We think the case has been fairly tried, and, no reversible error being shown, the judgment is affirmed.