## TEXAS UTILITIES CO. v. STORY.

### No. 4331.

Court of Civil Appeals of Texas. Amarillo. June 24, 1935.

Rehearing Denied Sept. 9, 1935.

P. B. Randolph, of Plainview, and Bledsoe, Crenshaw & Dupree, of Lubbock, for appellant.

Nelson & Smith, of Tahoka, and Lockhart & Brown, of Lubbock, for appellee.

JACKSON, Justice.

The appellee, on January 30, 1933, instituted this suit in the district court of Lynn county against the appellant, and predicated his cause of action on false and fraudulent representations alleged to have been made to him by which he was induced to purchase certain corporate stock for the sum of $1,392.50, for which amount he sought judgment.

On March 3, 1934, he filed a second amended original petition, on which the case was tried, and alleged that about January 1, 1930, the American Commonwealth Power Corporation of Delaware issued shares of its first preferred stock and placed a portion thereof for sale with Albert E. Pierce & Co., investment bankers of Chicago, Ill.; that the Commonwealth Power Corporation and the Pierce Company constituted the appellant and W. S. Anglin, its local manager at Tahoka, agents to sell such stock, and in pursuance of such agency, and in order to induce the public, including the appellee, to purchase, the appellant advertised the stock, sending literature to its customers through the mail, placing placards in the windows of its local office, and advertising in the local newspapers, advising of the safety of an investment in such stock, and instructed its employees and agents, including W. S. Anglin, to sell the stock and represent that it was stock in said appellant company, backed by all the resources thereof.

That on July 15, 1930, W. S. Anglin, by virtue of his agency, represented to plaintiff that the stock was worth on the market $100 per share, but in order to show its appreciation of its patrons, the appellant was extending to them the privilege of purchasing for $92.50 per share. That the stock was an absolutely safe, good, dividend-paying investment, and the appellant would repay him, on demand and ten days' notice, the price he paid for such shares of stock, and guaranteed that it would pay quarterly dividends.

That relying on such representations, the appellee, on July 25, 1930, contracted with appellant for one share of said stock for the agreed price of $92.50 and paid thereon an installment of $10. On July 29th he contracted for the purchase of four additional shares at the same price, paying thereon the sum of $128.75. That

in compliance with his installment contracts, he paid the balance due thereon, and on August 27th the appellant delivered to him five shares of stock, but he observed that it was issued by and in the name of the American Commonwealth Power Corporation. That he promptly consulted W. S. Anglin relative thereto, and was advised that such shares were in fact shares of the appellant, backed by its assets, and the American Commonwealth Power Corporation was but another name of the utilities company. That the stock was a safe investment, would pay dividends, and appellant would repay him, on demand and ten days' notice, the purchase price of his said stock. That relying on these renewed representations, he retained the five shares, and thereafter purchased additional stock, aggregating in all fifteen shares. That such representations were false and fraudulent, all of which was known to appellant, and made with no intention of performance, but made for the purpose of inducing appellee to purchase such shares of stock. That on January 25, 1933, he learned that the shares purchased were not in fact stock in the appellant, but stock issued by and in the name of the American Commonwealth Power Corporation, which was then in the hands of a receiver. That he immediately presented such stock to appellant and demanded that it refund him the money he had paid therefor, which demand was refused. That he had paid the appellant for such stock and it had received and appropriated the money to its own use and benefit, had agreed to deliver him stock of the appellant company, but instead fraudulently delivered to him stock in the American Commonwealth Power Corporation, all of which entitled him to rescind his agreement to purchase and recover the $1,392.50 paid for said stock.

The appellant filed a plea of nonjoinder, and alleged that the appellee entered into contracts with and purchased the stock involved from Albert E. Pierce & Co., and it was therefore a necessary party to the suit to rescind the contract. It also urged as a plea in bar to the action for rescission that appellee had in his original petition elected to affirm the contract and recover for fraud and deceit, and was thereby precluded from thereafter seeking a rescission, especially since between the times he affirmed the contract and asked for a rescission thereof the stock had greatly depreciated in value.

It pleaded general denial and numerous special denials; asserted that W. S. Anglin was not acting as its agent, but acting for Albert E. Pierce & Co.; alleged that it was incorporated for the purpose of manufacturing, transporting, and selling electric light and power; was without authority to engage in the sale of stock of other corporations, to guarantee the payment of dividends thereon, or to agree to refund to any purchaser of stock in other corporations the price paid therefor, and if any such agreement, promise, or representation had been made they were ultra vires and void.

It further pleaded that the contracts for the purchase of the stock were in writing and made with Albert E. Pierce & Co. by the appellee, and by the terms thereof he had purchased stock in the American Commonwealth Power Corporation. That he received the shares purchased, issued by the American Commonwealth Power Corporation, kept them, retained the dividends paid thereon, and made no complaint until after the stock had depreciated in value and the said American Commonwealth Power Corporation had been placed in the hands of a receiver, all of which it urged as an estoppel precluding any recovery against it.

In response to special issues the jury found in effect that the appellant authorized W. S. Anglin to sell the stock, who represented to appellee that it was stock of the appellant company and backed by its resources, and that if plaintiff would purchase the appellant would, at any time thereafter, upon demand and ten days' notice, repay appellee the purchase price of said stock; that the promise of appellant to repay appellee for the stock was relied upon by him, was a material inducement causing him to purchase, and but for which promise he would not have purchased such shares of stock; that appellant had no intention of carrying out such promise when made; that appellee did not discover, in August, 1930, that the stock was not in fact stock of appellant and backed by its resources.

On special issues submitted by appellant the jury found that appellee kept the stock, retained the dividends paid thereon; that on and prior to January 1, 1932, such stock was readily salable on the market at the price paid by appellee, but after such date the stock depreciated and was not salable at such price; that the appellant remitted to Albert E. Pierce & Co. all money paid to it by appellee for the stock he purchased.

On these findings judgment was rendered that appellee recover of appellant the sum of $1,579.70, with interest thereon.

This is not an action to recover for fraud and deceit, but a suit for rescission, and appellee's right to rescind and recover the price paid for the stock, if sustained, must be on the findings that appellant promised to refund to him the price he had paid for the stock, that such promise was material, and but for which he would not have purchased the stock.

The appellant contends that such promise, if made and relied on, would be ultra vires and void, because neither authorized by its charter nor by the law. There is no finding that the American Commonwealth Power Corporation and the Texas Utilities Company were the same corporation. One was a foreign, the other a domestic, organization.

The written advertising described the shares as stock of the American Commonwealth Power Corporation. The written installment contracts which appellee admits he signed or accepted stipulate that he is purchasing stock in said power corporation; the shares he received and accepted showed on their face to be shares therein, and the dividends he received were paid by checks on said American Commonwealth Power Corporation.

The charter of appellant, essential to a disposition of this appeal, provides in substance that its purpose is for "the generation of and supply of electric light and motor power to the public; * * * to do everything authorized by the laws of Texas and necessary to produce, acquire and otherwise obtain electric current for the purpose of selling, furnishing and distributing same; * * * and incident to the business of the generation of any supply of electric light and motor power to the public."

Article 1349, R. C. S., applicable to a consideration of appellant's contention, provides: "No corporation, domestic or foreign, doing business in this State, shall employ or use its stock, means, assets or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law." For a construction of this

statute see Farmers' Gin Co. v. Kasch (Tex. Civ. App.) 277 S. W. 746; Passmore v. Dallas Distributing Co. (Tex. Civ. App.) 1 S.W.(2d) 666; Kirby v. Fitzgerald (Tex. Civ. App.) 57 S.W.(2d) 362.

"As it is usually not necessary for the proper conduct of a corporate business that it should lend its credit to an individual or other corporation, a corporation is held to have no power, in the absence of express charter power, to be surety or guaranty on another's contract." 10 Tex. Jur. p. 882, par. 247.

"The doctrine of ultra vires is applied more rigorously to public and quasi-public corporations than it is to private trading corporations." 10 Tex. Jur. p. 859, par. 229.

The appellee contends that the doctrine of ultra vires is not available in his case because he had performed his obligation and the corporation has received the benefits thereof. No estoppel against the defense of ultra vires was pleaded. If the appellant received any benefit from the purchase of the stock, it was remote or indirect, since the jury found, and such finding is not questioned, that the appellant remitted all the money it received from appellee for the purchase of the stock to Albert E. Pierce & Co.

"Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation. A corporation formed for the prosecution of a business may foster that business by necessary or appropriate means—those means which are direct, in their nature related to the objects of the corporation, and by whose employment those objects will be directly furthered. Under the pretense of fostering its own business, or even for that avowed purpose, it can not, however, entangle itself in engagements or enterprises not necessary or reasonably appropriate to the advancement of its interests, from which it will receive only an indirect or remote benefit, if any, and with which therefore, as tested by its charter powers and their objects, it can have no true concern.

"The pledging by a corporation of its credit for another's benefit as a means simply of enabling him to purchase its goods, is not a direct, and hence not a legitimate, means of promoting its own business. It is a means purely indirect, and any benefit derived by the corporation from the transaction is equally indirect. It is not a fostering of the business of a corporation to pledge its capital as security for the debts of prospective customers for the purpose of enabling them to buy its wares. It is inviting its destruction." W. C. Bowman Lumber Co. v. Pierson et al., 110 Tex. 543, 221 S. W. 930, 931, 11 A. L. R. 547.

"The prevailing doctrine is that a corporation has no power either to subscribe for or purchase shares of stock in another corporation, unless such power is expressly conferred upon it by its charter or other statute, or unless the circumstances are such that the transaction is a necessary or reasonable means of carrying out or accomplishing the objects for which it was created. Moreover, purchases of stock of other corporations have been held to be contrary to public policy, in addition to being beyond the power of the corporation." Fletcher Cyclopedia Corporations, vol. 2, § 1117, p. 2067.

■ Whether the promise of appellant to repay appellee the money he had paid for the stock he acquired be construed as an agreement of suretyship, indemnity, lending its credit to another, or for the purchase of stock in another corporation, it had no authority, under its charter and the law, to make such an agreement, and appellant's contention is sustained.

■ A different rule prevails where ultra vires is urged as a defense to an action against a corporation based on fraud and deceit.

"Corporations are liable for every wrong they commit, and in such cases the doctrine of ultra vires has no application.

"They are also liable for the acts of their servants while such servants are engaged in the business of their principal, in the same manner and to the same extent that individuals are liable under like circumstances. Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 604 [19 L. Ed. 1008]. An action may be maintained against a corporation for its malicious or negligent torts, however foreign they may be to the object of its creation or beyond its granted powers. It may be sued for assault and battery, for fraud and deceit, for false imprisonment, for malicious prosecution, for nuisance, and for libel." First Nat. Bank of Carlisle, Pa., v. Fannie

L. Graham, 100 U. S. 699, 702, 25 L. Ed. 750.

The appellant urges numerous other assignments which, in view of the disposition we have made of the case, we deem it unnecessary to discuss.

The judgment is reversed, and the cause remanded.